THEODORE CONROW et al., Respondents, *v.* JOSEPH J. LITTLE
et al., Impleaded, etc., Appellants.

Plaintiffs' firm contracted to manufacture, sell and deliver to defendant B.,
at such place and to such parties as he should employ to print a certain
book, such paper as he might require. B. had negotiated with L. & Co.,
a firm composed of the other defendants, for printing the book, but that
firm refused to enter into a contract until assured by plaintiffs that they
would furnish the paper. Upon being informed by one of the plaintiffs
that his firm had sold to B. the paper, and that they would deliver it to
L. & Co., the latter firm contracted with B. to do the printing, B. to pay
cash for the work. Plaintiffs, under their contract with B., delivered
to L. & Co. one hundred and fifty reams of paper, the bill for which
was made out and delivered to B. L. & Co. proceeded to execute their
contract, and did work under it, amounting to $950.24, but had only used
four reams of the paper, when plaintiffs, having discovered that a
promissory note given to them by B. as an inducement to them to enter
into their contract was a forgery, brought an action to recover the amount
due them, alleging the fraud; in which action they obtained an attach-
ment against the property of B., under which a levy was made upon the
one hundred and forty-six reams of paper in the hands of L. & Co. not
used. A bank deposit of B. was also levied upon, which was subse-
quently drawn out by plaintiffs upon a check of B. and applied ·upon
another claim against him. The attachment suit was discontinued, but
previous thereto this action was commenced to recover possession of the
paper. Defendants L. & Co. set up a lien on the paper and the attach-
ment proceedings as a defense. The court directed judgment for
plaintiffs. *Held*, error; that, L. & Co. had a lien upon the paper in ques-
tion as against B.; that as said firm had been induced to enter into
the contract in reliance upon plaintiffs' assurance, although such assur-
ance was given in ignorance of the fraud of B., they could not retract
the same, and the paper was to be considered as belonging to B.;
plaintiffs, therefore, could not retake the property without payment of
the amount due L & Co. for work done by them under the contract, not
simply that expended upon the paper itself; also, that as plaintiffs, on
discovery of the fraud, exercised their option and elected to affirm
the contract with B. by attaching the paper as his property, they could
not thereafter repudiate the contract and recover the property.
*E. C. F. Co.* v. *Hersee* (103 N. Y. 26); *Hays* v. *Midas* (104 id. 602)
distinguished.
Where a party takes legal steps to enforce a contract, this is a conclusive
election not to rescind on account of anything then known to him.

Where one states a thing to another with a view to the other altering his
position, the latter may hold him bound and the matter is regulated by
the state of facts imported by the statement.
*Conrow* v. *Little* (41 Hun, 395) reversed.

(Argued June, 14, 1889; decided October 8, 1889.)

Appeal from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made July 23, 1886, which affirmed a judgment in favor of
plaintiffs, entered upon a trial at circuit before a justice with-
out a jury.

This action was brought to recover possession of one
hundred and forty-six reams of paper.

The material facts are stated in the opinion.

*James R. Marvin* for appellants. The question of any
fraud on Branscom's part cannot, under the condition of things,
in anywise influence the rights of Little & Co. (*McNeil* v. *T.
N. Bk.*, 46 N. Y. 339; 15 East, 38; 10 Ad. & El. 90; 20
Wend. 268, 284; 8 Cow. 238; 13 Wend. 570; *Smith* v. *Clews*,
105 N. Y. 283; *Weaver* v. *Barden*, 49 id. 286; *Padden* v.
*Taylor*, 44 id. 375.) Little & Co. have a lien upon the paper.
(2 Kent's Com. 635; 24 Me. 219; *W. L. Co.* v. *Hahlo*, 105
N. Y. 234; *Morgan* v. *Congdon*, 4 Coms. 552; 105 N. Y.
234; 9 Wend. 268; 26 id. 467; Laws of 1862, chap. 482;
*Mott* v. *Lansing*, 57 N. Y. 112; *Mount* v. *Williams*, 11
Wend. 77; *Parshall* v. *Eggert*, 54 N. Y. 18.) The plaintiff,
after the discovery of the fraud, having brought an action
against Branscom in the Superior Court for the recovery of
the value of the paper sold to Branscom and the money loaned
to him, thereby lost their right to follow the goods in defend-
ants' possession. (*Goss* v. *Mather*, 2 Lans. 283; 46 N. Y.
689; 4 Paige, 537; 34 N. Y. 473; 46 id. 354; *Bowen* v.
*Mandeville*, 95 id. 239; 9 Bosw. 246; *Acer* v. *Hotchkiss*, 97
id. 395; *Morris* v. *Rexford*, 18 id. 552; *Moller* v. *Tuska*,
87 id. 169; *Rodermond* v. *Clark*, 46 id. 354.) Plaintiffs
having annexed to the summons a notice that in default of an
answer plaintiffs would take judgment in the whole sum
claimed, determined the action in affirmance of the contract,

because it is only in actions on contract that this notice may
be annexed to the summons. (Code Civ. Pro. §§ 419, 420.)
If plaintiffs' action be considered to be trover, then they sought
to recover the whole amount of damages from Branscom, and
they are precluded from replevying any part of the goods
sued for in trover. (*Rodermond* v. *Clark*, 46 N. Y. 354.)
If a party sues for a conversion he cannot recover the property
from a purchaser from the party sued in trover. It is held
that in such a case the title to the property passes. (*Booth* v.
*Powers*, 56 N. Y. 29; 32 Hun, 1.)  It is competent for a third
person, viz., the defendants in this action, to invoke the
doctrine of election of remedies against the plaintiffs. (*Powers*
v. *Benedict*, 88 N. Y. 609; *Moller* v. *Tuska*, 87 id. 166;
*Lloyd* v. *Brewster*, 4 Paige, 537.)  The plaintiffs have never
tendered to Little & Co. the amount of their lien, or offered
to pay it, and are in no position to reclaim the paper.  Little &
Co. have a special property in the paper by virtue of their
lien. (*Benoir* v. *Pagnin*, 40 Vt. 199; 6 Wait's Law and Eq.
144, 147.)

*Henry Parsons* for respondents.  There has been no election
of inconsistent remedies. (*Powers* v. *Benedict*, 87 N. Y.
605; *Johnson* v. *Frew*, 33 Hun, 193; *E. C. F. Co.* v. *Hersee*,
33 id. 169; 103 N. Y: 25; *Hayes* v. *Midas*, 104 id. 602;
7 Abb. Dig. 315; *Reid* v. *Martin*, 4 Hun, 590; 1 Abb. L.
Dict. 444; *Jewett* v. *Miller*, 10 N. Y. 402.)  There was no
lien established on the one hundred and forty-six reams sought
to be recovered in this action. (Overton's Law of Liens, 9, 11,
§§ 15, 46; Story on Agency, § 360; *Payne* v. *Batterson*, 22
Wkly. Dig. 109; *Stevens* v. *B. & W. R. R. Co.*, 8 Gray,
262.)  No lien was established in favor of Little & Co. even
as against Branscom. (*Stevens* v. *Brennan*, 79 N. Y. 254.)

DANFORTH, J.   The plaintiffs were manufacturers and
dealers in paper under the firm name of "Conrow Brothers,"
and the defendants Little and Demorest printers under the
name of "J. J. Little & Co."  The other defendant did busi-

ness as a publisher of books under the name of "Branscom, Manager." His fraud was the occasion of the controversy, but he makes no defense and the issue is between the other parties. It was tried at Special Term, and from the findings of the trial judge and from uncontradicted evidence it appears that in August, 1884, the plaintiffs agreed to manufacture for, and sell and deliver to Branscom as he might direct, and to such parties as he should employ to print his book, such paper for printing purposes as he might require, to the value of seven thousand dollars. He was negotiating with J. J. Little & Co. to do this printing, and so informed the plaintiffs, but Little & Co. refused to enter into an agreement to that effect "until they were assured by plaintiffs that they would furnish the paper to Branscom, and deliver it to Little & Co. for the printing of the books." On the ninth or tenth of September Theodore Conrow, one of the plaintiffs, knowing of this negotiation, called, with Branscom, upon Little & Co., and stated to them that the plaintiffs had sold to Branscom the paper for printing the books by Little & Co., and that they would deliver it to them for that purpose. Thereupon Little & Co. entered into an agreement with Branscom to do the typesetting and electrotyping for the book and print the same upon the paper so to be delivered to them by the plaintiffs for that purpose, and Branscom was to pay Little & Co. cash for the work.

The plaintiffs fulfilled their agreement with Branscom, delivered to him or on his account paper of the value of $3,589.50, and besides loaned and advanced to him $4,096.07, making a total indebtedness of $7,685.57. Included in that was the price of one hundred and fifty reams of paper which the plaintiffs under their contract with Branscom delivered directly to Little & Co. on the 21st, 22d and 23d days of October, 1884, and the bill therefor, under date of October twenty-third, was made out and given to Branscom, and stated the delivery of the paper to J. J. Little & Co.

Immediately upon the making of their contract with Branscom, Little & Co. proceeded to execute it, and before

the twenty-ninth of October, in composition and electrotyping, printing and otherwise, did work on account of the books to the amount in value of $950.24. In doing this they actually used four out of the one hundred and fifty reams, and still retained one hundred and forty-six reams. No part of the debt due them has been paid.

It appears that Branscom fraudulently induced the plaintiffs to enter into their agreement by delivering to them as genuine a note of $7,000, dated August 9, 1884, purporting to be made by the "Mississippi Mills," payable six months after date to the order of Col. Ed. Richardson, and to be indorsed by him; and on the 9th of September, 1884, Branscom gave a note of $5,000 of like tenor to Little & Co., which they received on account of printing. It turned out, however, that both notes were forged. On learning that fact, and on the thirty-first of October, the plaintiffs commenced an action against Branscom in the Superior Court of New York city for the recovery of the sum of $7,685.57, alleging the fraud practiced upon them to induce the sale of goods and loan of money, and claiming judgment for this sum. On the first of November they obtained an attachment in that suit from one of the justices of the court against the property of Branscom, and it was levied upon money of Branscom on deposit in the National Shoe and Leather Bank. On the eighteenth of November, $2,915, part of the money so levied on, was drawn from the bank by plaintiffs on Branscom's check, made and given to them on that day, and applied on account of the money theretofore loaned by them. The sheriff, also, on the fifth of November, levied on the one hundred and forty-six reams of paper then in the hands of Little & Co. In July, 1885, the attachment suit was discontinued, but in the meantime, on the 6th of December, 1884, the present action was begun. The plaintiffs alleged that Little & Co. claimed a lien upon the one hundred and forty-six reams of paper for the sum due them, viz., $956.25, and asked for judgment "that the defendants acquired no lien upon or right to said paper," and that "the plaintiffs have judgment against them for its possession and return, or for the value,

viz., $1,445.40." The defendants set up their lien·and the attachment proceedings, and, upon trial, asked for a dismissal of the complaint, but the learned trial judge denied that application, and directed judgment according to the prayer of the plaintiffs. Concerning its correctness the judges of the court below differed, but a majority were for affirmance.

Upon the facts found we think the judgment should have been the other way :

*First.* As between Conrow Brothers and Little & Co. the question is, which of two innocent persons should suffer from the fraud of a third ? It is plain that, except for the intervention of the former, and their assurance that they were to manufacture the paper for Branscom, and that it would be forthcoming when required, the latter would not have undertaken the work which Branscom wanted. It is true this assurance was given in ignorance of Branscom's fraud, but it was the occasion of defendants' agreement, and if the plaintiffs are now permitted to take away the paper, delivered in apparent fulfillment of their promise, and as the property of Branscom, they, not less than Branscom, will be wrong-doers, although, in making that promise, they had no intention to do harm. I think the inquiry is the same as if Branscom had committed no fraud, and was, in equity and morals, the real owner of the paper, as he was in law. It had been manufactured for him and delivered pursuant to his order, and he had the written title. This was as the plaintiffs had assured the defendants it would ·be. They must, therefore, be ·held to stand in Branscom's place, and to have taken the risk when they placed the goods as Branscom's goods in defendants' possession. What, then, as against Branscom, were the defendants' rights or interest in the paper ? In regard to the four reams, on which work had been actually done, no question arises. The lien is conceded. Upon the others no work had been done, and the claim is for the general balance of debt due on account of the job for the completion of which the paper had been delivered. It cannot be said that the two things were unconnected, for, first, each was indispensable to the other ; the work done by the defendants would

be useless if no paper was to be had for printing, and the paper was useless unless type and plates were provided for imprint. And, in the next place, the work and paper are connected by the very agreement and understanding of the parties. The defendants refused to enter upon the work of preparing the type and plates until assured that the paper was to be furnished, and no delivery of the work was to be made except upon cash payment. Whatever the aspect of the contract at its inception and at its close, the defendants refused to rely, to any degree, upon the personal credit of Branscom, and from this and other circumstances attending the method of dealing of the parties, and the transaction itself, a contract of lien is necessarily to be implied. Possession was acquired by contract, and when, through the owner's fault, completion of the work was prevented, a liability was incurred to pay such damage as the defendants should sustain. This would, at least, include a recompense for the labor done and materials prepared for use, and for that the law gives a lien or right of detention. It attached the moment the paper came into the possession of the defendants for the purpose of having work done upon it, and remains good until discharged by payment, not only for labor literally expended upon the paper itself, as by printing, but for any act done, or labor performed, or money expended in the preparation of instrumentalities by which that labor was to be performed, as types, cuts, illustrations, electrotypes and other things of like nature and object. The defendants' claim does not go further, and neither Branscom nor the plaintiffs can, without the violation of legal principles, be permitted to retake the property until that payment is made.

There is another ground for judgment in favor of the defendants. The contract between Branscom and the plaintiffs was, upon the discovery of Branscom's fraud, voidable at their election. As to him the plaintiffs could affirm or rescind it. They could not do both, and there must be a time when their election should be considered final. We think that time was when they commenced an action for the

sum due under the contract, and in the course of its prosecution applied for and obtained an attachment against the property of Branscom as their debtor. They then knew of the fraud practiced by him, and disclosed that knowledge in the affidavit on which the attachment was granted, and became entitled to that remedy because it was made to appear that a cause of action existed in their favor by reason of "a breach of contract to pay for goods and money loaned obtained by fraud." The attachment was levied and the action pending when the present action, which repudiates the contract and has no support except on the theory of its disaffirmance, was commenced. The two remedies are inconsistent. By one the whole estate of the debtor is pursued in a summary manner and payment of a debt sought to be enforced by execution; by the other specific articles are demanded as the property of the plaintiff. One is to recover damages in respect of the breach of the contract, the other can be maintained only by showing that there was no contract. After choosing between these modes of proceeding the plaintiffs no longer had an option. By bringing the first action, after knowledge of the fraud practiced by Branscom, the plaintiffs waived the right to disaffirm the contract, and the defendants may justly hold them to their election. The principle applied in *Foundry Company* v. *Hersee* (103 N. Y. 26) and *Hays* v. *Midas* (104 id. 602) require this construction, for the present contains the element lacking in those cases, viz.: Knowledge of the fraud practiced by the vendee; and by reason of it the plaintiffs were put to their election.

It is not at all material to the question that the plaintiff discontinued the first suit before bringing the present to trial, for it is the fact that the plaintiffs elected this remedy, and acted affirmatively upon that election, that determines the present issue. Taking any step to enforce the contract was a conclusive election not to rescind it on account of anything known at the time. After that the option no longer existed, and it is of no consequence whether or not the plaintiffs made their choice effective. It does appear, however, that after the

attachment was levied, part of the money so levied upon was paid over to the plaintiffs. It is not important that it was drawn on Branscom's check, for the attachment was still in force and the suit pending, and the effect of that proceeding as to third parties could not be defeated by adopting another method to get the money out of the bank. Nor could its voluntary application upon a debt, other than that contracted for the paper, permit the plaintiffs to reassume the title to it. In either aspect of the case the plaintiffs failed to make out a cause of action. The rights which the defendants assert were acquired in good faith and for value, and in reliance upon the plaintiffs' representations. To the truth of those representations, verbal and written, the plaintiffs may lawfully be held. They are directly within the well-established rule that where one states a thing to another with a view to the other altering his position, then the person to whom the statement is made is entitled to hold the other bound, and the matter is regulated by the state of facts imported by the statement. (*Griswold* v. *Haven*, 25 N. Y. 608; *McNeil* v. *Tenth Nat. Bank*, 46 id. 325.) The defendants' rights, therefore, are greater than Branscom's and should be indefeasible.

In the next place the plaintiffs, by their conduct, voluntarily affirmed the contract which formed the basis of the defendants' transaction with Branscom, and it cannot now be repudiated to the defendants' loss.

It follows that the judgments of the courts below should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed and new trial granted, costs to abide event.