In re LINFORTH et al.

(District Court, N. D. California. May 14, 1898.)

No. 2,071.

1. MORTGAGES—FORECLOSURE—DEFICIENCY—CONSTRUCTIVE SERVICE.
   Where, in a foreclosure suit, constructive service only is had upon the defendant, while a deficiency decree may not be entered, the deficiency after sale constitutes a valid and subsisting indebtedness, which may be recovered by appropriate action.

2. BANKRUPTCY—SECURED CREDITOR—DETERMINATION OF VALUE OF MORTGAGED PROPERTY.
   Rev. St. § 5075, prescribing the manner in which the value of mortgaged property must be determined in order that the mortgagee may be admitted as a creditor against the bankrupt estate of the mortgagor, applies only to cases where bankruptcy proceedings are pending. Hence, where a foreclosure suit has been begun, and prosecuted to judgment, after an order discharging bankruptcy proceedings against the mortgagor, and returning him his property, the mortgagee is entitled to prove his claim for the deficiency against the estate upon the subsequent setting aside of the order of discharge.

3. ELECTION TO RELY UPON SECURITY.
   Where a mortgage creditor of a bankrupt obtains, from the federal court in which the bankruptcy proceeding is pending, permission to foreclose his mortgage in a state court, upon condition of waiving any personal claim for deficiency, but for good reason, and without laches, fails to

prosecute his suit to judgment, such creditor or his assignee is not bound as by an election to rely solely upon the mortgaged property, so as to preclude him from being subsequently admitted as a creditor against the estate of the bankrupt on account of the same debt.

4. SAME—DISCHARGE SET ASIDE—INTERVENING RIGHTS.

A partnership and the individual partners having been adjudged bankrupt, one of the partners, by agreement of all parties in interest, including firm creditors, was discharged, and his individual property returned to him; the agreement providing that his individual creditors should have the same right to proceed for the collection of their debts as if no bankruptcy proceedings had ever been had. Under this agreement, a secured creditor foreclosed his mortgage; but, the service being by publication, no decree for the deficiency could be entered. Subsequently the discharge was set aside by the court, and the debtor's individual property again made subject to the claims of firm creditors. *Held,* that the deficiency claim of the individual creditor was entitled to be paid out of such property in preference to the claims of firm creditors.

Pierson & Mitchell, for assignee.

T. M. Osmont, for E. W. Chapman.

DE HAVEN, District Judge. This is a proceeding commenced by the assignee in bankruptcy, under section 5081 of the Revised Statutes of the United States, for the purpose of determining the validity of a claim filed in this court by E. W. Chapman against the individual estate of John Bensley, bankrupt. The material facts out of which the present controversy arises are these:

On November 24, 1875, John Bensley executed to the Nevada Bank of San Francisco his promissory note for the sum of $80,000, payable, with interest, one year from its date, and as security therefor on the same day executed to that bank a mortgage upon a large amount of real estate. On the 15th day of February, 1877, this note was still unpaid; and the firm of Linforth, Kellogg & Co., and the individual members thereof (Bensley being one of the co-partners in the firm), were duly adjudicated bankrupts, upon a petition filed in this court on that day by the firm and its individual members. On the 17th day of February, 1877, one James Coffin, to whom the above referred to note and mortgage of Bensley had been assigned by the Nevada Bank, for its convenience, and for collection only, instituted an action in one of the courts of this state for the purpose of foreclosing such mortgage. On March 26, 1877, James Patrick and A. L. Tubbs were duly appointed assignees in bankruptcy of said bankrupts; and on the following day all of the property of the firm of Linforth, Kellogg & Co., and also all the property of its individual members. was duly conveyed to said assignees in bankruptcy. Thereafter, on the 28th day of September, 1877, James Coffin filed in this court a petition in which he asked for an order allowing him to make the assignees of said bankrupts parties to the foreclosure suit commenced by him on February 17, 1877, and that he be permitted to proceed therein. The court thereupon made an order granting the prayer of his petition. The order, however, provided that in any judgment for foreclosure of said mortgage he should waive any personal judgment against Bensley. The said action never proceeded to judgment, and was dismissed on March 20, 1878. Prior to the dismissal of that action, Bensley and his individual creditors, including the Nevada

Bank of San Francisco, and the creditors of the firm of Linforth, Kellogg & Co., entered into a contract by which it was agreed between all the parties thereto that this court should grant to Bensley a decree of final discharge in the bankruptcy proceedings then pending, and direct the assignees in bankruptcy to reconvey to him his individual property, "free from, and discharged of, said proceedings in bankruptcy." This agreement contained the following provision:

"Said individual creditors of said John Bensley may and shall have the right to enforce payment of their claims against said John Bensley as fully and completely and effectually, to all intents and purposes, as though these presents had never been made, and as though said John Bensley had never been adjudged a bankrupt; and said John Bensley hereby agrees to pay and discharge to said individual creditors all their just claims, in the same manner and to the same extent as if said bankrupt proceedings had never been instituted, and as if these presents were never entered into, and that such claims shall have preference to payment out of the individual assets of said John Bensley."

This agreement further provided that the decree of final discharge of Bensley in the bankruptcy proceedings should contain the express provision that the obligation of that agreement, and the matters therein agreed on the part of Bensley to be performed, should be exempt from the operation of such decree of discharge. The contract also provided that it was to be subject to the approval of this court, and without such approval should be of no effect whatever. This contract was ratified by this court on February 12, 1878; and in pursuance thereof Bensley was on March 20, 1878, finally discharged from the bankruptcy proceeding, and from all his debts and liabilities; and on the same day the assignees in said bankruptcy proceeding reconveyed to him all his individual property. In December, 1880, James Coffin reassigned to the Nevada Bank the note and mortgage executed to that bank by Bensley on November 24, 1875; and on January 19, 1881, the bank commenced an action for the foreclosure of the mortgage in one of the superior courts of the state of California. John Bensley, James C. Patrick, and A. L. Tubbs were made defendants. Patrick and Tubbs, as before stated, were the assignees in bankruptcy of the firm of Linforth, Kellogg & Co., but were not sued in their official capacity; and no order was made by this court authorizing the Nevada Bank to prosecute that action. At the date of its commencement, and at all times thereafter, Bensley was absent from the state of California; and summons in the action was served upon him by publication only. On June 5, 1882, judgment was entered in that action in favor of the Nevada Bank against Bensley for the sum of $93,753.94 and costs; and the mortgaged premises were duly sold under an order of sale for the sum of $57,152.92, which was applied in part satisfaction of said judgment, leaving unpaid a deficiency of $37,727.51, which deficiency was on August 10, 1882, docketed in said court as a judgment against Bensley. Thereafter Bensley specially appeared in the action, and upon his motion the judgment for the deficiency was vacated by the court, upon the ground that the court was without jurisdiction to render a personal judgment against him for such deficiency, because the summons in the action was not personally served upon him. The Nevada Bank

thereafter assigned its alleged claim against Bensley for the deficiency arising upon the sale of the mortgaged premises under the decree of foreclosure, and E. W. Chapman now owns the same. On February 25, 1890, John Lloyd, the present assignee in bankruptcy of Linforth, Kellogg & Co., commenced in this court an action in equity to set aside certain conveyances of real property alleged to have been made by Bensley for the purpose of defrauding his creditors, and also to vacate the former order or judgment of this court, discharging him from the bankruptcy proceedings hereinbefore referred to, and also to annul the order of this court of February 12, 1878, ratifying the agreement between Bensley and his creditors, and to compel a reconveyance of all property conveyed to Bensley by the assignees in bankruptcy pursuant to such order. On December 7, 1893, a decree was entered in that action in accordance with the prayer of the bill of complaint therein; and real estate, of great value, belonging to the individual estate of Bensley, was also thereby recovered, and vested in the assignee in bankruptcy for the benefit of his creditors.

1. The state court in the foreclosure suit instituted by the Nevada Bank against John Bensley et al. on January 19, 1881, by the constructive service of summons on Bensley, acquired jurisdiction to enter a valid decree of foreclosure; and while it did not by this manner of service obtain jurisdiction to docket a personal judgment against Bensley for the deficiency left unpaid after the sale of the mortgaged premises, still the deficiency ascertained by the sale under the decree of foreclosure constituted an indebtedness due from Bensley to the plaintiff in that action, which such plaintiff thereupon became entitled to recover by appropriate action (Blumberg v. Birch, 99 Cal. 416, 34 Pac. 102), unless the right to proceed against Bensley for such deficiency had been waived.

2. It is claimed, however, by the assignee in bankruptcy, that the holder of this claim cannot be admitted as a creditor against the bankrupt estate of Bensley, because the value of the mortgaged property was not ascertained in the manner provided by section 5075 of the Revised Statutes of the United States. That section provides as follows:

"When a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor for the balance of the debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such a manner as the court shall direct; or the creditor may release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt. * * * If the property is not so sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt."

This section is only intended to prescribe the practice to be pursued by a secured creditor when there is pending a proceeding in bankruptcy against his debtor. Unless there is such a proceeding pending, the section can have no operation. This being so, it must follow that the section is not applicable to the facts now before the court. When, on January 19, 1881, the Nevada Bank commenced the action to foreclose its mortgage, and until after the final decree in that action, there was no bankruptcy proceeding pending against

Bensley, as he had on March 20, 1878, been given by this court a certificate of final discharge in the bankruptcy proceeding; and this discharge continued in force until it was subsequently set aside by the decree of December 7, 1893.

3. It is claimed, however, that the petition filed by Coffin, as the representative of the Nevada Bank, asking for permission to proceed in the action for foreclosure instituted by him while the bankruptcy proceeding against Bensley was pending, followed as it was by the order of the court granting such permission upon the express condition that no judgment for deficiency should be obtained against Bensley, was in effect a conclusive election upon the part of the Nevada Bank to look alone to the mortgaged property for payment of its debt; and the bankruptcy proceeding against Bensley having been revived by the decree of December 7, 1893, Chapman, who has succeeded to the interest of that bank, is bound by that election, and thereby estopped from asserting his claim against the individual estate of Bensley, now in process of administration in the bankruptcy proceeding thus revived. It is, of course, a familiar rule that a party cannot, in the course of litigation, occupy inconsistent positions; and, where one has elected between several inconsistent courses, he is confined to that which he first adopts. In accordance with this rule, it is generally held that where a party, with full knowledge of all the facts, takes legal steps to enforce a contract, it is a conclusive election not to rescind such contract on account of fraud or other matters then known to him. Conrow v. Little, 115 N. Y. 387, 22 N. E. 346. So, also, an action ex contractu upon an implied contract of sale precludes a subsequent action by the same party for conversion of the same property, based upon the same transaction upon which the former suit was founded. Terry v. Munger, 121 N. Y. 161, 24 N. E. 272. And so, when a trustee wrongfully pays to another money which belongs to his beneficiary, the latter may sue the trustee as his debtor, or he may ratify the payment, and sue the person who received the money, but he cannot do both; and his election, once effectually made, is conclusive upon him. Fowler v. Bank, 113 N. Y. 450, 21 N. E. 172. In cases like those just mentioned, it is generally held that the bringing of an action, with full knowledge of all the facts, is a conclusive election to pursue the particular remedy or form of action selected, although such action be subsequently dismissed, and not prosecuted to judgment. In my opinion, this doctrine of election, which is really founded upon the principle of estoppel, is not applicable to a proceeding by which a secured creditor obtains from a United States district court, in which a bankruptcy proceeding is pending, permission to foreclose in a state court a mortgage upon a portion of the estate of the bankrupt. If the action thus authorized is not prosecuted to judgment in the state court, the creditor does not occupy an inconsistent position when he afterwards comes into the court having jurisdiction of the bankruptcy proceeding, and asks to be admitted as a creditor against the estate of the bankrupt, on account of the debt secured by his mortgage. Whether he elects to pursue the one course or the other, he affirms the same facts as the basis of his claim against the bankrupt. In such a case

it is clear that the rule that no person should be permitted to occupy inconsistent positions in the same litigation cannot be properly applied. See Crossman v. Rubber Co., 127 N. Y. 34, 27 N. E. 400. It is possible that a case might arise where a mortgagee would not be allowed to thus change the method of procedure first adopted by him, —as, for instance, where there has been great laches upon his part in finally declining to proceed in the state court, and the mortgaged property has in the meantime greatly depreciated in value; but no such case as that is presented here.

4. But, in addition to what has already been said, it appears that, before the dismissal of the action referred to, all parties in interest— all the creditors of the firm of Linforth, Kellogg & Co., as well as the individual creditors of Bensley—agreed that Bensley should be discharged from all further proceedings in bankruptcy, and that the individual creditors of Bensley should "have the right to enforce payment of their claims against said Bensley as fully and completely and effectually, to all intents and purposes, as though these presents had never been made, and as though said John Bensley had never been adjudged a bankrupt; * * * that such claims shall have preference to payment out of the individual assets of said John Bensley." It was after this agreement that the action of foreclosure first instituted was dismissed, and the decree of foreclosure in the subsequent action brought by the Nevada Bank against John Bensley et al. obtained. When the mortgaged property was sold under that decree of foreclosure, there still remained a balance due to the Nevada Bank of $37,-727.51; and, by the terms of the agreement above referred to, the Nevada Bank was, on the day such deficiency was ascertained, entitled to take all lawful methods to recover such sum from Bensley; and such claim was entitled to preference of payment over the firm creditors of Linforth, Kellogg & Co., out of the individual assets of said Bensley. The subsequent decree of the court on December 7, 1893, setting aside its former order ratifying and approving this contract, and vacating its final discharge of Bensley in the bankruptcy proceedings commenced February 15, 1877, cannot be permitted to have relation back, so as to destroy the intervening right acquired by the Nevada Bank, under the agreement above referred to, to enforce payment of its claim out of the individual assets of Bensley, in preference to the firm creditors of Linforth, Kellogg & Co., and to which right Chapman succeeded by assignment on May 20, 1890, before the commencement of the action in which such decree was entered. The contest in this proceeding is really between the creditors of the firm of Linforth, Kellogg & Co., represented by the assignee, and Chapman, who is the only individual creditor of John Bensley. In my opinion, the firm creditors are estopped by their agreement from disputing the claim now made by Chapman, as the successor in interest of the Nevada Bank, to be paid out of the individual estate of Bensley. The effect of the decree of December 7, 1893, was to again bring all of the individual assets of said John Bensley under the jurisdiction of this court for administration in the bankruptcy proceedings; but it did not affect the then existing right of Chapman, under the agreement made between Bensley and his cred-

itors, to enforce payment of his claim against Bensley out of such assets, and in preference to the firm creditors of Linforth, Kellogg & Co. Ordered that prayer of the petition of the assignee be denied.