DAVIS v. BUTTERS LUMBER CO.

(Filed March 24, 1903.)

1. INJUNCTIONS—*Receivers—Banks and Banking.*

Where a resident creditor of an insolvent bank brings suit in another state, which hinders the collection of the assets of the bank by the receiver, the receiver is entitled to enjoin the creditor for the prosecution of such suit.

2. BANKS AND BANKING—*Drafts—Election of Remedies—Fraud.*

Where an insolvent bank discounts drafts, such insolvency being known to the officers, and the drawer of the drafts sues to recover the amount of said drafts placed on deposit, he could not in another suit disaffirm the discount for fraud.

3. INJUNCTIONS—*Receivers—Remedy at Law.*

In a suit by a receiver for an injunction to restrain a resident creditor from maintaining a suit in another state against the corporation for which the receiver had been appointed, it is no defense, that the plaintiff had an adequate remedy at law.

CLARK, C. J., and DOUGLAS, J., dissenting.

PETITION to rehear this case, reported in 130 N. C., 174. Petition allowed.

*Russell & Gore,* for the petitioner.
*E. S. Martin* and *Rountree & Carr,* in opposition.

CONNOR, J.    This cause is before us upon a petition to rehear filed by the defendant.    It was heard at Spring Term, 1902, and the court being of opinion that certain findings or conclusions of fact made by the court were inconsistent and contradictory, ordered a new trial.    130 N. C., 174.    The defendant in its petition suggests that by reason of other findings than those referred to by this court, those which were deemed contradictory and immaterial, judgment should have been rendered in this court.    The entire record has been argued before us upon the rehearing and we are enabled to

dispose of the cause without sending it back for further proceedings.

The action is brought by the plaintiff, receiver of the Bank of New Hanover for the purpose of enjoining the defendant from prosecuting a certain action instituted by the defendant against the Bank of New Hanover in the Superior Court of Baltimore City in the State of Maryland. The defendant answered the complaint, and for further answer set up a counterclaim against the said Bank. The plaintiff replied denying the allegations in regard to the counterclaim. The parties waived a trial by jury and the court found the facts. So far as it is necessary to the decision of this cause, the facts as found by the court, are:

That the Bank of New Hanover was, on June 19, 1893, and had been for several years prior thereto, conducting a banking business in the city of Wilmington in this State, having been duly chartered and organized; that on said day the bank being insolvent ceased to do business and in actions properly constituted in the courts of this State the plaintiff was duly appointed receiver of said bank and duly qualified; that the defendant is a corporation duly chartered and organized under the laws of this State and is a citizen and resident of said State; that at various times during the month of June, 1893, just prior to the suspension of said bank, the defendant negotiated and discounted with said bank several drafts drawn by it on one W. M. Burgan of Baltimore, Md., payable to the order of said bank, aggregating the sum of $1,535.85 and the net amount of said drafts after deducting the discount of $4.08 was duly entered to the credit of the defendant as cash on its general account on the books of the bank. The drafts were duly accepted by the said Burgan, the drawee; that thereafter and up to the time of the suspension of the bank, the defendant drew checks from time to time against its account with the bank amounting to the sum

of $109.87 which were duly paid by the bank, and at the time of the suspension thereof there was a balance to the credit of the defendants on said books of $1,412.90; that there was no specific agreement by the bank with the defendant that the drafts were taken for collection, but it was agreed to take the drafts and credit them to the defendant's account, and if they came back unpaid the bank would charge back the full amount to said account and return the drafts, and this was an agreement with all of the customers of the bank. This was because the defendant was liable on the drafts as drawer equally with the drawee Burgan.   The defendant had a right to draw on the proceeds of the drafts after they had been credited.   The defendant understood that the title to the drafts had passed to the bank and that the bank had become its debtor for the net amount of the drafts; that both the bank and the defendant intended at the time when the drafts were discounted that the title thereto should pass to the bank; that the bank was utterly insolvent at the time when it took the drafts from the defendant, and its managing officers were aware of that fact; that after the plaintiff, as receiver of said bank, took charge of its assets, the defendant applied to him to charge against the defendant in said account with the bank the amount of said drafts, and to deliver them up to the defendant that it might collect said drafts of said Burgan for its own benefit, which plaintiff refused to do. The defendant soon thereafter stopped the payment of the said drafts by Burgan and commenced an action in the city of Baltimore, Maryland, against the Bank of New Hanover upon the aforesaid debt of $1,421.90 the said balance of account, and caused an attachment and garnishment to be made upon the debt due to said Bank by Burgan by reason of his acceptance as aforesaid, for the purpose of condemning and subjecting the debt, owing by Burgan to the Bank, to the payment of the debt aforesaid due by the Bank to the defend-

DAVIS *v.* LUMBER CO.

ant, and said action is still pending. The defendant at the time when it brought the suit in Baltimore and attached the proceeds of said drafts, knew that at the time when the drafts were discounted by the bank and credited to its account, the bank was utterly insolvent and that its managing officers were aware of that fact. Burgan has refused to pay the drafts and they remain unpaid. The court upon said findings of fact adjudged that the defendant be perpetually enjoined from prosecuting the suit in Baltimore.

This court was of the opinion and so held that the finding of the court that there was no special agreement that the drafts were taken for collection, but that it was agreed to take the drafts and credit them to the defendant's account; that if they came back unpaid the bank would charge back the full amount to said account and return the drafts to the defendant, irreconcilably conflicted with the finding that the defendant understood that the title to the drafts passed to the bank and that the bank had become its debtor, and that the bank so understood the transaction. It will be observed that the court also found that the right of the bank to charge the amount of the drafts back to the defendant, if unpaid, was "because The Butters Lumber Co. was liable on the drafts as drawers equally with the drawee Burgan." We do not think that in the light of the conduct of the defendant, in regard to the suit in Maryland, the said findings materially affect the right of the parties in this action. At the time the bank closed its doors, the drafts had not been returned; on the contrary, they had been accepted and the defendant had drawn against them, and, as found by the court, had a right to draw the entire amount and that the bank could not have prevented its doing so. The right of the plaintiff to enjoin the defendant from prosecuting the action in the Maryland Court, so far as he thereby prevented or interfered with the collection of the assets of the bank which passed to

him as receiver, is well settled.  *Cole v. Cunningham,* 133 U. S., 107.  The defendant says that it is immaterial whether the fact be that the bank received the drafts as collecting agent or purchased them outright, for that the court finds that at the time the drafts were deposited or sold, as the case may be, the bank was hopelessly insolvent, and that such insolvency was well known to the managing officers of the bank; that it was therefore by fraudulent concealment that the bank obtained the drafts, and no title passed to it.  This proposition is sustained by high authority.  *St. Louis & S. F. Railroad Co. v. Johnson,* 133 U. S., 566, and many other cases.

It is also true that the drafts passed to the plaintiff as receiver subject to the rights of the defendant to demand and sue for them.  The plaintiff says that, while this may be true the defendant has elected to treat the drafts as the property of the bank and the bank as its debtor for the balance due it on account, in doing so it has ratified the purchase or taking of the drafts.  The defendant, while not conceding this insists that it is not open to the plaintiff to make this contention, because it is not set up in the pleadings; that by its answer the defendant set up the counter-claim and that the plaintiff in his reply does not set up any estoppel; that an estoppel, to avail the party claiming under it, must be pleaded.  We are of opinion that the defense to the defendant's counterclaim is not an estoppel, but that it presents the question of an election to pursue one of two inconsistent remedies, open to the defendant, and that when made it operates as a ratification of a voidable contract; that upon the facts alleged in the pleadings and the facts found by the court the plaintiff may rely upon the conduct of the defendant to raise and present his defense.  Mr. Bigelow in his work on estoppel p. 693 says that frequently the term "estoppel" is used when the facts present a ratifica-

tion of a voidable contract by election. We find the authorities, in which the question is discussed, all treat and speak of it as one of election. In *Terry v. Munger,* 121 N. Y., 161, 8 L. R. A., 216, 18 Am. St. Rep., 803, Peckham, J., in speaking of the admissibility of a judgment, says: "It was not by way of estoppel however that the judgment was admissible, it was admissible for the sole purpose of showing that the plaintiff had elected to treat the taking of his property as a sale, and that was shown ·by the perusal of the complaint." The question therefore is, did the defendant by bringing the action in the courts of Maryland elect to treat the bank as its debtor and the drafts as the property of the bank? The defendant undoubtedly had one of two courses open to it upon the failure of the bank. It could demand and sue for the drafts; they were in the possession of the receiver; his rights were not superior to those of the bank. It could on the other hand ratify the contract and prove its debt against the bank; it certainly could not do both. It brought suit in Maryland "to recover the sum of $1,421.90 with interest from June 18, 1893, due and owing from the defendant to the plaintiff for the balance on deposit to the credit of the plaintiff in the hands of the said defendant on said date." (Record p. 55.) It caused the debt, owing by Burgan by reason of the acceptance of said drafts, to be attached as the property of the bank. "It is for the party defrauded to elect whether he will be bound. But if he does affirm the contract he must affirm it in all its terms. *   *   *   * When the contract is once affirmed, the election is completely determined. *   *   *   * Any acts or conduct which unequivocally treat the contract as subsisting, after the facts giving the right to rescind have come to the knowledge of the party, will have the same effect. Taking steps to enforce the contract is a conclusive election not to rescind on account of anything known at the time." Pollock on Contracts, 507.

"The contract between Branscom and the plaintiff was upon discovery of Branscom's fraud voidable at their election. As to him, the plaintiff could affirm or rescind it. They could not do both, and there must be a time when their election should be considered final. We think that time was when they commenced an action for the sum due under the contract, and in the course of its prosecution applied for and obtained an attachment against the property of Branscom their debtor." Danforth, J. in *Conrow v. Little,* 115 N. Y., 387, 393, 5 L. R. A., 693. "The proof that an action of that nature had been commenced would have been just as conclusive upon the plaintiff, upon the question of election, as would the judgment have been (the party knowing all the facts at the time of bringing the action). It was not necessary that a judgment should follow upon the action thus commenced." Peckham, J. in *Terry v. Munger,* 121 N. Y., 161; 8 L. R. A., 216; 18 Am. St. Rep., 803.    See also *O'Donald v. Costant,* 82 Ind., 212.

This case would present the singular spectacle of a party maintaining a suit in Maryland against the bank and attaching its property there, upon the theory that the bank was its debtor, and at the same time upon the identical state of facts recovering the same property here, upon the theory that the bank was never its debtor, and that the property was at all times the defendant's. Certainly this anomaly could not be permitted to exist if both suits were pending in the courts of this State.

We have not discussed the question presented in the brief of the plaintiff that in any aspect of the case, upon the facts found, the title to the drafts passed to the bank because, as we have said, conceding that the defendant could have recovered them from the receiver, it has elected not to do so, but to ratify the title in the bank. To the point presented by the defendant's demurrer *ore tenus* that the plaintiff has

no equity because he has a remedy at law, easy and adequate, it should be said that the courts of this State will not permit one of its own citizens to compel the officer of the court, in his administration of a trust under the control of the court, to go into a foreign jurisdiction to litigate his rights. It is the policy and usually the rule of the court to compel all claims to assets in the hands of the receiver to be litigated in the original cause. This course prevents confusion and conflicts, and saves costs and expenses.

The defendant says that the plaintiff got no title to the drafts under the decree of the Superior Court of New Hanover County, and that therefore in no aspect of the case can he recover the amount of the drafts from Burgan. The plaintiff's appointment as receiver is by virtue of Chapter 155, Laws 1891, providing for the closing up of the affairs of insolvent banks. Certainly the courts of this State will protect the rights of its receiver in suits brought in such courts. If Burgan was found in this State, and suit was brought by the receiver against him for the recovery of the draft, the court would sustain the action. The defendant in its counterclaim has brought the title to the drafts, as between itself and the receiver, into litigation, and we hold that as between them the receiver has the title. The plaintiff in his complaint asks that the defendant be enjoined from proceeding to prosecute his suit in the courts of Maryland. The judgment in this action does not deal with or affect the rights of Burgan or the receiver as against him, but operates only upon the action of the defendant and prevents its interference in the matter. This court does not pretend to any interference with courts of other States. It acts upon the defendant. *Booth v. Clark,* 58 U. S., 322.

We are of the opinion that the judgment of this Court should be reversed and that the petition be allowed. We are

DAVIS *v.* LUMBER CO.

further of the opinion that the judgment of the Superior Court of New Hanover County should be affirmed.

It may be best for the protection of the rights of all parties that the decree be so modified that the suit in Maryland proceed to judgment, and the proceeds of the drafts be brought into this State. The parties will pursue such course in this respect as they may be advised.

Petition allowed and the judgment of the court below affirmed.

DOUGLAS, J., dissenting: I regret that I cannot concur in the opinion of the court, but it seems to me that an injustice is done to the defendant on mere questions of practice to the exclusion of the larger equities which are all on his side. The opinion hinges upon the fact of the implied election by the defendant when he sued by attachment in Baltimore to recover the money from Burgan, on whom the drafts were drawn. I use the expression "implied election" because there is no evidence of an express election to treat the drafts as belonging to the bank. On the contrary, before bringing its action, the defendant called upon the receiver, expressly elected to take back the drafts, and demanded their return. The receiver refused to give them up. It was then, and then only, that the defendant brought its action in attachment, in which the receiver intervened. I do not intend to reflect in the slightest degree upon the receiver, who is simply seeking to protect the assets in his hands. I refer to his actions only as they may affect the rights of the defendant. I admit that, upon his refusal to surrender the notes, the defendant should have made a motion in the cause before the court appointing the receiver. I believe it is conceded that if such a motion had been made in apt time, it would have been the duty of the court to have ordered the surrender of the drafts. But who has been hurt by the defendant's failure

to make such a motion? No one except the defendant. No other creditor has been prejudiced or misled. If the defendant is now given the drafts or every dollar of their proceeds, it will get no more than it would have gotten in the first in-stance. Why not let it have them. Simply because it elected to treat them as the property of the bank by bringing a suit, which we say it had no right to bring. Why hold it to an election with one hand, and with the other wrench from it every benefit of its election? It had already elected to take back the drafts by vainly demanding them from the receiver. But we say that it re-elected when it brought its action. Why not let it elect a third time? This is a court of equity, dealing with equitable principles; the fund is intact, and all necessary parties are before the court.

I think that as the court has restrained the defendant from pursuing the remedy it elected, it thereby remitted the defendant to its original right of election. In 6 Enc. Pl. & Pr. 366 (c) it is said that "If the suitor has in his first action mistaken his remedy and adopted a mode of redress incompat-ible with the facts of his case and is defeated on that ground, he is still free to elect and proceed anew." Again, on the same page the rule is thus laid down: "V. The power to choose between conflicting remedies is substantially co-exten-sive with the right to prosecute or defend an action. Logical and legal consistency would seem to require that the right to litigate and the power to elect should stand on the same foot-ing, the one co-ordinate with the other."

In the case at bar, the defendant has not sought to obtain its money from different funds, but has persistently follow-ed the identical money in Burgan's hands, either indirectly through the surrender of the drafts or directly by attach-ment. Therefore, the inconsistent rights between which it was required to elect were rather in the nature of remedies. All that it wanted was the money in Burgan's hands. "Only

this, and nothing more." Moreover, it would seem that the defense of an inconsistent election, being in the nature of estoppel, should be pleaded to be effective.

CLARK, C. J., concurs in the dissenting opinion.