BRAMHALL, DEANE CO. v. INTERNATIONAL MERCANTILE MARINE CO.

(District Court, S. D. New York. May 18, 1906.)

SHIPPING—FITTINGS SUPPLIED TO CHARTERER—RIGHT OF VENDOR TO REMOVE ON RESCISSION OF SALE.

Culinary fittings supplied at the instance of a charterer and affixed to a vessel cannot be removed by the vendor on a claim of rescission based on an alleged fraud by false representations made by the vendee, unless the vessel is placed in as good condition as she was before the installation of such fittings, in so far as their removal would injuriously affect her; nor can the owner of the vessel be required to pay for the fittings, which are of little or no value to it, on the refusal of the vendor to remove them on such terms.

In Admiralty.

Wheeler, Cortis & Haight, for libellant.

Robinson, Biddle & Ward, for respondent.

ADAMS, District Judge. This action was brought by the Bramhall, Deane Company against The International Mercantile Marine Company, a New Jersey Corporation, to recover the value of certain supplies, consisting of cooking apparatus, galley fixtures, bake ovens, steam kettles and cooking utensils, sold and delivered on the steamship Pennsylvania, owned by the respondent, in September, 1904, at

the instance of the Nautical Preparatory School, a corporation of Rhode Island.

The libellant claims that the school became insolvent in September, 1904, and upon being advised of such fact, the libellant gave notice to the school, to its receiver in Rhode Island, and to the respondent, of the rescission of the contract of sale, on the ground of fraud, and demanded possession of the property. The libellant further alleges that the said receiver, by order of court, abandoned all claim and title to a large part of the property still on board of the Pennsylvania. After said abandonment, the libellant, on or about the 3rd day of November, 1904, demanded that said property should be surrendered to it by the respondent, but the latter refused to give up any part of the same and converted it to its own use to the libellant's damage in the sum of $1,500. It further alleges, in the alternative, that on or about the said time the libellant delivered on board the said steamship the same goods, which it particularly sets forth in an appendix annexed to the libel, and at the time of delivery the respondent had chartered the said steamship to the said school with knowledge that she was to be outfitted by the school for a long ocean voyage, and allowed the libellant to go on board and render valuable services and to supply valuable fixtures. It further alleges that the respondent rescinded the charter and took possession of the steamer which was of enhanced value by reason of the work done and materials furnished by the libellant, whereby the respondent was unjustly enriched at the expense of the libellant and is indebted to it in the said sum which is the reasonable value of the said work and materials.

The respondent denies many of the material allegations of the libel and alleges:

"Seventh. And for a separate defence the respondent avers that without admitting the libellant's right in the premises it agreed that the libellant might remove from the said steamship all the unattached supplies it had furnished to the Nautical Preparatory School, and also all the fixtures, provided that in the case of the latter it should restore the steamship to the same condition in which she was before they were attached; and the respondent avers that the libellant has removed the unattached supplies, but has refused to remove the fixtures upon the terms aforesaid."

At the conclusion of the trial I expressed the view that the libellant could not recover, because even if it was entitled to rescind and recover the goods, it lost such right when it declined to take the things back, subject to the condition of putting the vessel in the condition she was before they were put on board, and that I could not then see why the vessel should be made to suffer because the parties allowed the school to obtain credit. I stated, however, that if the libellant wished me to examine the case further, I would do so and the case could be submitted to me on briefs. After considerable delay, the case was finally submitted.

The facts, as disclosed by the testimony and a stipulation of the parties, are briefly as follows:

The Nautical Preparatory School went into possession of the Pennsylvania under a charter dated prior to September 1st, and on that date applied to the libellant for galley supplies for the steamship,

which required extensive alterations to fit her for the school's purposes. In July, 1904, the libellant made enquiries of R. G. Dun & Co., a mercantile agency, for a statement of the financial standing of the school, with a view of ascertaining whether that company was a good financial risk and if it was worth while to sell to it. A report was received which, among other things, stated that the school had already enrolled 200 pupils, which would insure the company about $320,000 to meet the running expenses for a year, and further that the company had an undisputed claim of $76,500 against a responsible ship building and engineering company secured by a good mortgage on the real and personal property of the concern. The libellant considered the report favorable and concluded to furnish the goods, which it did to the extent stated.

The charter party provided that the charterer should have the right to make at its own expense any alterations it needed, subject to the owner's approval in writing, and that the charterer should at the expiration of the contract return the steamer to the owner in the same condition she was in on the 1st of June, the time of delivery, reasonable wear and tear excepted. The contract also provided for a bond to protect the owner from all liens against her. The bond was to be in the sum of $50,000, or in the alternative certain amounts, equivalent thereto, at different periods. Under the charter the school furnished the supplies in question which it obtained from the libellant. The steam piping system with which they were connected was furnished by other parties, the libellant simply connecting its own apparatus with theirs.

After this work was done, the school was declared insolvent and a receiver appointed in Rhode Island. The respondent then withdrew the vessel from the charterer's possession and claimed the right to retain possession of the cooking appliances furnished by the libellant unless the latter would in removing them, should it desire to take that course, restore the steamer to the same condition in which she was before they were attached.

The libellant claims that it was entitled to rescind its contract because it was made in reliance upon the Dun report that it had furnished a cash bond of $50,000, enrolled 200 pupils and that the entire capital had been subscribed. When the school was declared insolvent, it appeared that the statements respecting its financial condition were, if not actually false, at least misleading, and the libellant claiming they were false elected to rescind the sale.

The situation is left somewhat uncertain by the testimony. It is urged by the libellant that a Mr. Eiswold, the vice president and general manager of the school, made the statements to the Dun agency upon which the report was based and he was put upon the witness stand by the libellant. It was proved by him that no security towards the $50,000 was given excepting $10,000, which sum was deposited with the respondent; that it had not enrolled 200 paying pupils but it had actually 68 or 70, representing contracts for tuition amounting to about $89,000, upon which there had been paid $17,500. Later the enrollments increased, so that about the middle of September there

were 150 pupils, each of whom had paid the full tuition fee of $1,280, representing altogether contracts with the company for tuition amounting to $192,000. Out of this money, the school had paid large sums in consideration of which it had received property. Notwith- standing the scheme was attended with some prosperity at the outset, the managers subsequently found that the enrollments did not come up to their expectations and events happened, the loss by fire of the steam-boat Slocum, for example, which discouraged parents from sending their children on the water for tuition. The managers saw that they could not meet the liabilities of the school and a receiver was asked for and obtained.

A claim, similar to the one under consideration, was made upon the receiver by the Bramhall, Deane Company and he applied to the court for instructions, representing that the right to remove the property was denied by the owner of the steamer and stating:

"Fifth. There are also on the Pennsylvania certain galley furnishings which were purchased from the Bramhall, Deane Company of New York at a cost approximately of $1,500. These furnishings have been claimed by the Bramhall, Deane Company on the ground that by reason of the fraud in the contract of purchase, the title thereto never passed to the Nautical Preparatory School. These galley furnishings are attached to the piping sys-tem of the ship.

"Ninth. So far as the property heretofore mentioned is connected with the piping system of the ship, the International Mercantile Marine Company deny the right of the Receiver to remove the same unless under the terms of the charter party entered into between the International Mercantile Marine Company and the Nautical School, the Receiver returns the Penn-sylvania to it in the same order and condition as she was on the first day of June, 1904, reasonable wear and tear only excepted. This will neces-sitate the complete readjustment of the piping system of the ship. The Pennsylvania, when taken by the Nautical School, was equipped as a freighter and the piping system was so constructed as to be above the spar deck, and not to run through any of the decks where cargo was stored. This was altered by the Nautical School at a very large expense, so that the piping at the present time runs through the decks where the cargo would be carried if the ship is used as a freighter, and if it is necessary by reason of the removal of the property placed thereon, which is connected with the piping system, to replace the piping in the condition in which it was when the Pennsylvania was received on the first day of June, 1904, from the International Mercantile Marine Company, the expense of the replacement of such piping would so far exceed the value of the property taken from the ship."

The court in Rhode Island thereupon made this order:

"The above matter came on for hearing on the first day of November, 1904, on the petition of the Receiver for instructions with reference to the removal of certain property attached to the S. S. Pennsylvania, and was argued by the counsel and thereupon, upon consideration thereof, it is ordered and decreed that the Receiver be and he is hereby instructed and directed not to remove but to abandon so much of the property thereon, which was placed there by the American Laundry Machinery Company, as is connected with the steam and water piping system of the ship and with the electric wiring of the ship; not to remove but to abandon so much of the property which was purchased from the Bramhall, Deane Company as is attached to the steam and water piping system of said ship, not to remove but to abandon the plumbing equipment and all wood work such as cup-boards, lockers, etc., which were placed thereon by the Nautical Preparatory School. * * *"

It appears, therefore, that the goods, for the value of which recovery is sought, were abandoned by the receiver, under the instructions of the court, for the substantial reason that it would not be for the benefit of the estate to remove them from the ship.

The libellant made a claim to recover $2,167.76 from the receiver, covering the goods in question here, using the report of the Mercantile Agency, there alleged, as here, to have been the basis of the credit of 30 days extended to the school. In the testimony there in support of the claim, it was stated that the claimant had been offered the goods but upon the condition that the claimant should restore that portion of the ship to which the goods were attached to its original condition. The attaching cost was the sum of $150. The conditions were regarded as prohibitory and not availed of. On the examination before the receiver, it appeared that the goods had been used for a short time and, in that way, became second hand, and this was considered by the Bramhall Company in claiming damages. Thus the Bramhall Company was claiming title to the goods before the receiver but owing to their being attached to the ship, they were practically worthless, the value was claimed as damages, with an additional sum for detention.

Of course, if the libellant was entitled to remove the goods, as such a construction was contemplated by the respondent's contract of letting, it should not be precluded from asserting such right as it might have in the matter by any slight damage to the ship incident to the removal of the fittings, but it is not at all clear that only a slight damage would have been done. I do not think that the respondent was entitled to require that the ship should be put into the condition she was before the installation of the libellant's fittings, so far as that condition required the replacing, for example, of any old boilers or fittings of that description, which were in her and removed to give place to the new fittings, but I do think that in removing the libellant's fittings, no material injury should be done to the ship, and it has not been made clear to me that the fittings could, from their nature, be removed without substantial detriment to the vessel.

It is urged by the respondent, citing Conrow v. Little, 115 N. Y. 387, 22 N. E. 346, 5 L. R. A. 693, and Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803, that with full knowledge of the situation, including the alleged falsity of the representations made by the school to the Dun Company, the libellant elected to treat the transaction as a sale and to claim the price of the goods from the receiver. The libellant's attitude before the receiver is not perfectly clear. It filed a claim with him for the goods but at the same time filed a claim for damages, based upon a theory of rescission. On the 26th of February, it withdrew the first mentioned claim and amended its claim so that it rested upon the claimed fraud. Nevertheless a claim remained with the receiver. It does not appear that the libellant is pursuing inconsistent remedies, so as to preclude it from seeking this one but upon the ground stated above, and pursuant to the one expressed at the trial, I do not think the libellant should succeed. It would be obviously unjust to require the respondent to pay damages

to the libellant under the circumstances of this case, because of the detention of a quantity of material affixed to its vessel by the libellant, the vessel having been damaged in the installation, and the material of itself being of very little value to any one and probably of none to the respondent. I do not see any reason for putting the libellant in a better condition than the other creditors, if it has to be done at the expense, to any extent, of this one, which appears to have been a much larger loser through the unfortunate enterprise.

Libel dismissed.