THE BLUMENBERG PRESS, Appellant and Respondent, *v.* THE MUTUAL MERCANTILE AGENCY, Respondent and Appellant.

*Lien of a manufacturer who is not required to make delivery before payment — when, although the contract is entire, the lien does not cover the product manufactured before default — the giving of credit operates as a waiver of the lien.*

A mercantile agency, which desired to publish a reference book, entered into a contract with a printing house, by which the latter agreed to set the type for the book, print it and make it ready for binding.   The contract fixed the price to be paid for the different branches of the work, and stipulated that the price for composition should include ownership of the linotype slugs, composing the pages and electrotype plates of such pages, and also that "payments will be made weekly covering the amount of work performed."

*Held,* that the contract was an entire one, and that, as it did not require the printing house to make deliveries thereunder prior to receiving payment, the

printing house had an artisan's lien upon all work done and not paid for or delivered;

That, in the event of the mercantile agency's making default in the payment of the weekly installments, the printing house could not claim a lien upon linotype slugs manufactured and paid for prior to the default which the mercantile agency had allowed to remain in the possession of the printing house to facilitate the making of corrections in such slugs, especially when the printing house made a charge for the storage of such slugs, thus showing that its possession thereof was for the benefit of the mercantile agency and not under a claim of lien;

That the acceptance by the printing house of notes, in payment of the weekly installments due under the contract, operated (in view of the charge for storage of the linotype slugs) as a waiver of its right to assert a lien upon the slugs manufactured during the period covered by the extension of credit created by the notes, although the notes were not paid.

CROSS-APPEALS by the plaintiff, The Blumenberg Press, and by the defendant, The Mutual Mercantile Agency, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 30th day of April, 1902, upon the decision of the court, rendered after a trial at the New York Special Term, in an action to foreclose an artisan's lien.

The action is brought under section 1737 of the Code of Civil Procedure, to enforce a lien of $9,738.35 on linotype slugs, paper, etc., made by plaintiff for the defendant under a contract dated November 3, 1899, the defendant having defaulted in payments for the work performed.

The contract is embodied in a letter sent by the plaintiff to defendant on November 3, 1899, wherein it was said:

" For the sum of twenty-three thousand eight hundred dollars ($23,800) we will agree to set up in agate linotype slugs one thousand pages of the first edition of your reference book, * * * said amount to include ownership by you of all material in said pages; also include electrotype plates of all said pages, it being understood, however, that alterations from original copy shall be charged for at the rate of one dollar ($1.00) per hour for all work done on machine, and for alterations requiring hand work only, a charge of sixty (60) cents per hour shall be made.

" For each additional page over and above one thousand pages, the rate shall be twenty-two dollars ($22.00) per page, to include ownership by you of material in said page and electrotype plate of same.

" For the further sum of one thousand two hundred and eighteen dollars and seventy-five cents ($1,218.75), we will agree to print on paper to be supplied by you, five thousand (5,000) copies of each of one thousand pages, eight pages to a form, and for each additional eight pages over and above one thousand pages, the rate shall be nine dollars and seventy-five cents ($9.75) for five thousand (5,000) impressions.

" For the further sum of three hundred and twelve dollars and fifty cents ($312.50), we will agree to fold in 16 page signatures and press ready for bindery, five thousand copies of each book of one thousand pages, and for each additional number of printed sheets at the rate of one dollar ($1.00) per thousand signatures of 16 pages.

" The foregoing rates apply to first edition of your book.    *    *    *
If we receive the first installment of copy on November 15th, and daily supplies of not less than 15 pages thereafter, we will agree to have ready for the binder on February 20th, 1900, complete copies of one thousand pages or over.

" It is understood that upon submission of proper vouchers, payments will be made weekly covering the amount of work performed."

These conditions were accepted in a letter written by defendant the same day. Thereafter plaintiff began the work, purchasing material, preparing type in slugs or forms representing pages of the reference book, and printing the parts of the book which were to be issued for each State in the Union, and issued weekly statements of the work performed which the defendant paid, receiving from time to time the sheets printed. The slugs from which the pages were printed and which, under the contract, belonged to the defendant when paid for, were not removed from the plaintiff's possession when the weekly bills were met as were the printed sheets, as it was desired that they should be on hand in case any revision was required of the plaintiff, in accordance with the agreement; and plaintiff, therefore, purchased and erected cabinets, arranged so that any particular page could readily be obtained. In the course of the work many changes and corrections were thus made in the slugs, for which charges were stated in the weekly bills and paid by the defendant. The total amount of work performed and materials furnished amounted to $60,476.60, and to this the plaintiff added

$900 for storage of the slugs in its cabinets during the period. The total payments made by the defendant prior to the bringing of the action for payments not made was $51,874.48, and the balance due plaintiff, as conceded upon the trial — the sole question being as to whether or not a lien attached — was $9,638.35, amounting, with interest, to $9,879.62.

It further appeared upon the trial that the vouchers for weekly bills up to and including February 8, 1901, aggregated $51,874.48, which is less than the total payments made down to June, 1901. And it was shown that the plaintiff delivered to the defendant property worth about $58,000 during the period, and retained in its possession all the slugs which it had made for defendant, and placed in its cabinets, and a small quantity of paper and printed sheets. It is upon these slugs and papers remaining, and worth about $4,000 as second-hand material, that the plaintiff seeks to enforce his lien for the balance due from the defendant.

The defendant had difficulty in meeting the weekly payments, and the plaintiff, therefore, shortly after the work was begun, agreed not to press the indebtedness of $5,000 until all the States were in; "until December, 1900;" and a number of the weekly statements provided for the payment of sums "in excess of $5,000" outstanding. Thereafter, three notes were given by defendant to plaintiff, one dated May 21, 1901, for $666.67; another, May 21, 1901, for $666.66, and the other July 5, 1901, for $1,010, not as part of the $5,000, but to pay the balances remaining. These notes were not paid, and were tendered to the defendant at the trial.

The Special Term held that the plaintiff had a lien for the unpaid amount which it could enforce against such slugs only as were made subsequent to February 8, 1901, and upon such paper sheets as were in its possession. From the judgment so entered the plaintiff appeals, on the ground that it has a lien on all the slugs, and the defendant appeals on the ground that plaintiff has no lien whatever.

*Joseph N. Goldbacher*, for the plaintiff.

*Henry Schoenherr*, for the defendant.

O'BRIEN, J. :

The contract was one and not several for the printing of the first edition of defendant's reference book. It shows upon its face that

the intention of the parties was that the plaintiff should do all the work required in the way of making the type, printing and correcting proof; in fine, everything necessary up to the binding and publication of the book. Although the contract provided for weekly payments for work performed, this did not effect a change, as there was but one contract for the entire work. That being so, a lien for the total amount due attached to the goods manufactured by the plaintiff and not delivered to the defendant, and the plaintiff waived its lien only on such of the goods as were delivered to the defendant. (*Wiles Laundering Co.* v. *Hahlo,* 105 N. Y. 234.) In the case cited, suit was brought to enforce a lien on goods of the defendant laundered by the plaintiff under a contract which provided that payments should be made on the first of each month for goods laundered and returned during the preceding month. It was held therein that no lien attached either for the balance due the plaintiff or for the work done on the goods in its possession, for the reason that a particular time of payment was fixed by the contract, which was subsequent to the time when the owner was entitled to a return of the property. It was stated in the opinion, however, that where work is done under a single contract which does not specify that payments are to be made after delivery of the goods, a lien attaches to all the property undelivered, "and if part of it is voluntarily returned without payment for the work, the only consequence is that the person doing the work has abandoned a part of his security for the total amount due him and retained his lien therefor only upon the property which remains in his possession." In the case at bar the contract did not require that deliveries should be made to the defendant prior to payments for the work performed. The plaintiff had a lien, therefore, for sums due on all the goods produced and not delivered to the defendant.

We are thus brought to the question as to what goods were undelivered after they were produced under the contract. *First,* we have the goods manufactured up to February 8, 1901. It is conceded that payments made on account were sufficient to pay for what was produced up to that date, including not only the printed sheets, but also the slugs. The sheets were all delivered and the defendant obtained the actual possession of them, and no question of lien arises as to them. With regard to the slugs, the contract

provided that when manufactured and paid for, ownership therein passed to the defendant, and there was nothing in the contract to prevent the defendant from taking them into its actual possession, also, save that the plaintiff under the contract was entitled to use them for the purpose of making any needed corrections or revisions. It was to facilitate this purpose that the defendant permitted the slugs to remain with the plaintiff. Were the slugs retained by the plaintiff, however, as property on which a lien might attach as property undelivered to the defendant, or were they kept for the defendant as its property? The answer to this question is to be found in the manner which the parties themselves construed the contract and treated the property. Possession was retained by the plaintiff, but it made a charge of $900 for storage which was assented to by the defendant. This charge for storage excludes the idea that plaintiff retained possession under a claim for lien because where property is retained for a lien no storage can be charged. It was held in *Somes* v. *Brit. Emp. Shipping Co.* (8 H. L. Cas. 338), that no authority can be found for the proposition that one holding property for the purpose of enforcing a lien can hold the proprietor for the expense of keeping it, and the rule works both ways. These slugs, therefore, were the property of the defendant and legally stand in the same position as the sheets delivered by the plaintiff prior to February 8, 1901, and no lien attaches thereon. We thus agree with the learned judge at Special Term in the statement that " these goods were fully paid for and were left in plaintiff's possession for a particular purpose wholly inconsistent with the claim of a lien, and under such circumstances no lien will attach. (19 Am. & Eng. Ency. [2d ed.] 12.)"

We are, then, to determine whether a lien attaches, as found by the Special Term, to the slugs produced by the defendant subsequent to February 8, 1901, for which it is conceded payment has not been made. Up to this point we have discussed the questions presented as if the contract originally made between the parties was being carried out in its entirety. As a matter of fact, however, the evidence shows that there was a material deviation from the terms of that contract upon the subject of payments. It provided that the payments should be weekly for the work performed. The defendant, however, soon fell behind and the plaintiff agreed not

to insist upon payment for the time being nor until a date named when certain work was performed. The claim thus deferred was for $5,000 for work produced, and the weekly statements show that payments were made only in excess of such $5,000 due. Credit was further extended by the plaintiff accepting three notes for the balance due over the $5,000. It is true that these notes were never paid and were tendered to the defendant on the trial, but they were accepted in payment and such acceptance was a waiver of the lien. An extension of credit waives a lien. (19 Am. & Eng. Ency. of Law [2d ed.], 28.)

We have not overlooked the cases in which it has been held that mere acceptance of notes where they are not paid and where possession of the property has in the meantime been retained, does not constitute a waiver, it being competent to return the notes. In the application of such rule, however, the character of the possession must be considered, and where, as here, the possession which the plaintiff had was for the defendant, as shown by the fact that a charge for storage was made, the legal result upon the question of waiver is the same as though there was an actual delivery of the property and acceptance of notes in payment therefor.

With respect to the slugs, therefore, it thus appears that the plaintiff has lost its lien by accepting payment or extending credit or transferring ownership and charging storage, either and all of which would constitute a waiver of any lien which plaintiff might otherwise have had. And what has been said about slugs applies equally to the paper and other property which it holds.

That part of the judgment, therefore, appealed from by the plaintiff, which holds that the plaintiff is not entitled to a lien upon the entire property, should be affirmed; and as to the defendant's appeal, the judgment should be reversed and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J., INGRAHAM, McLAUGHLIN and HATCH, JJ., concurred.

Judgment so far as appealed from by plaintiff affirmed; and on defendant's appeal, judgment reversed, new trial ordered, with costs to defendant to abide event.