BLUMENBERG PRESS v. MUTUAL MERCANTILE AGENCY.

(Supreme Court, Appellate Division, First Department. December 5, 1902.)

1. ARTISAN'S LIEN—CONTRACT—DELIVERY.

Where a contract for setting up in linotype slugs and printing defendant's book provided for weekly payments, and for rates of payment for alterations and additional work, but showed that the intention was that plaintiff should do all the work in making the type, which were to be the property of the defendant, and in printing and correcting proof, and in the binding and publication of the book, it was one, and not a several, contract, and the lien for the total amount due attached to goods manufactured and not delivered.

2. SAME.

Plaintiff agreed to make type for defendant, and to print and publish his book. Payments were to be made weekly. The type were to become the property of defendant, when paid for, but were retained by plaintiff for the purpose of making revisions desired; and a charge was made for storage, to which defendant assented. Payments were made until a certain date, after which defendant defaulted. *Held*, that plaintiff, having charged storage, had no lien on the type as for property undelivered, to secure payments accruing after default.

3. SAME—WAIVER OF LIEN.

Plaintiff waived his lien on type manufactured after default, by accepting notes in payment therefor.

Appeal from special term, New York county.

Proceedings by the Blumenberg Press against the Mutual Mercantile Agency. From the judgment, both parties appeal. Affirmed as to plaintiff's appeal, and reversed as to defendant's appeal.

The action is brought, under section 1737 of the Code of Civil Procedure, to enforce a lien of $9,738.35 on linotype slugs, paper, etc., made by plaintiff for the defendant under a contract dated November 3, 1899; the defendant having defaulted in payments for the work performed. The contract is embodied in a letter sent by the plaintiff to defendant on November 3, 1899, wherein it was said: "For the sum of twenty-three thousand eight hundred dollars ($23,800), we will agree to set up in agate linotype slugs one thousand pages of the first edition of your reference book; * * * said amount to include ownership by you of all material in said pages; also include electrotype plates of all said pages; it being understood, however, that alterations from original copy shall be charged for at the rate of ($1.00) per hour for all work done on the machine, and for alterations requiring handwork only a charge of sixty (60) cents shall be made. For each additional page over and above one thousand pages, the rate shall be twenty-two dollars ($22) per page, to include ownership by you of material in said page, and electrotype plate of same. For the further sum of one thousand two hundred eighteen dollars and seventy-five cents ($1,218.75), we will agree to print, on paper to be supplied by you, five thousand (5,000) copies of each of one thousand pages, eight pages to a form; and for each additional eight pages over and above one thousand pages the rate shall be nine dollars and seventy-five cents ($9.75) for five thousand impressions. For the further sum of three hundred and twelve dollars and fifty cents ($312.50), we will agree to fold in 16-page signatures, and press ready for bindery, five thousand copies of each book of one thousand pages, and for each additional number of printed sheets at the rate of one dollar ($1) per thousand signatures, of 16 pages. The foregoing rates apply to first edition of your book. * * * If we receive the first installment of copy on November 15th, and daily supplies of not less than 15 pages thereafter, we will agree to have ready for the binder on February 20th, 1900, complete copies, of one thousand pages or over. It is understood that, upon submission of proper vouchers, payments will be made weekly, covering the amount of work performed." These conditions

were accepted in a letter written by defendant the same day. Thereafter plaintiff began the work, purchasing material, preparing type in slugs or forms representing pages of the reference book, and printing the parts of the book, which were to be issued for each state in the Union, and issued weekly statements of the work performed, which the defendant paid, receiving from time to time the sheets printed. The slugs from which the pages were printed, and which, under the contract, belonged to the defendant when paid for, were not removed from the plaintiff's possession when the weekly bills were met, as were the printed sheets, as it was desired that they should be on hand in case any revision was required of the plaintiff in accordance with the agreement; and plaintiff therefore purchased and erected cabinets, arranged so that any particular page could readily be obtained. In the course of the work, many changes and corrections were thus made in the slugs, for which charges were stated in the weekly bills, and paid by the defendant. The total amount of work performed and materials furnished amounted to $60,476.60, and to this the plaintiff added $900 for storage of the slugs in its cabinets during the period. The total payments made by the defendant prior to the bringing of the action for payments not made were $51,874.48, and the balance due plaintiff, as conceded upon the trial,—the sole question being as to whether or not a lien attached,—was $9,638.35; amounting, with interest, to $9,879.62. It further appeared upon the trial that the vouchers for weekly bills up to and including February 8, 1901, aggregated $51,874.48, which is less than the total payments made down to June, 1901. And it was shown that the plaintiff delivered to the defendant property worth about $58,000 during the period, and retained in its possession all the slugs which it had made for defendant and placed in its cabinets, and a small quantity of paper and printed sheets. It is upon these slugs and papers remaining and with about $4,000 as secondhand material, that the plaintiff seeks to enforce his lien for the balance due from the defendant. The defendant had difficulty in meeting the weekly payments, and the plaintiff, therefore, shortly after the work was begun, agreed not to press the indebtedness of $5,000 until all the states were in,—"until December, 1901"; and a number of the weekly statements provided for the payment of sums "in excess of $5,000 outstanding." Thereafter three notes were given by defendant to plaintiff,—one dated May 21, 1901, for $666.67; another, May 21, 1901, for $666.66; and the other, July 5, 1901, for $1,010,—not as part of the $5,000, but to pay the balances remaining. These notes were not paid, and were tendered to the defendant at the trial. The special term held that the plaintiff had a lien for the unpaid amount, which it could enforce against such slugs only as were made subsequent to February 8, 1901, and upon such paper sheets as were in its possession. From the judgment so entered, the plaintiff appeals on the ground that it has a lien on all the slugs, and the defendant appeals on the ground that plaintiff has no lien whatever.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Joseph N. Goldbacher, for plaintiff.
Henry Schoenherr, for defendant.

O'BRIEN, J. The contract was one, and not several, for the printing of the first edition of defendant's reference book. It shows upon its face that the intention of the parties was that the plaintiff should do all the work required in the way of making the type, printing, and correcting proof,—in fine, everything necessary for the binding and publication of the book. Although the contract provided for weekly payments for work performed, this did not effect a change, as there was but one contract for the entire work. That being so, a lien for the total amount due attached to the goods manufactured by the plaintiff and not delivered to the defendant, and the plaintiff

waived its lien only on such of the goods as were delivered to the defendant. Laundry Co. v. Hahlo, 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496. In the case cited, suit was brought to enforce a lien on goods of the defendant laundered by the plaintiff under a contract which provided that payments should be made on the first of each month for goods laundered and returned during the preceding month. It was held therein that no lien attached, either for the balance due the plaintiff, or for the work done on the goods in its possession, for the reason that a particular time of payment was fixed by the contract, which was subsequent to the time when the owner was entitled to a return of the property. It was stated in the opinion, however, that where work is done under a single contract, which does not specify that payments are to be made after delivery of the goods, a lien attaches to all the property undelivered, "and, if part of it is voluntarily returned without payment for the work, the only consequence is that the person doing the work has abandoned part of his security for the total amount due him, and retained his lien therefor only upon the property which remains in his possession." In the case at bar the contract did not require that deliveries should be made to the defendant prior to payments for the work performed. The plaintiff had a lien, therefore, for sums due on all the goods produced and not delivered to the defendant.

We are thus brought to the question as to what goods were undelivered after they were produced under the contract. First, we have the goods manufactured up to February 8, 1901. It is conceded that payments made on account were sufficient to pay for what was produced up to that date, including not only the printed sheets, but also the slugs. The sheets were all delivered, and the defendant obtained the actual possession of them, and no question of lien arises as to them. With regard to the slugs, the contract provided that, when manufactured and paid for, ownership therein passed to the defendant; and there was nothing in the contract to prevent the defendant from taking them into its actual possession, also, save that the plaintiff, under the contract, was entitled to use them for the purpose of making any needed corrections or revisions. It was to facilitate this purpose that the defendant permitted the slugs to remain with the plaintiff. Were the slugs retained by the plaintiff, however, as property on which a lien might attach as property undelivered to the defendant, or were they kept for the defendant as its property? The answer to this question is to be found in the manner in which the parties themselves construed the contract and treated the property. Possession was retained by the plaintiff, but it made a charge of $900 for storage, which was assented to by the defendant. This charge for storage excludes the idea that plaintiff retained possession under a claim for lien, because, where property is retained for a lien, no storage can be charged. As said in Somes v. Shipping Co., 8 H. L. Cas. 338, "no authority can be found for the proposition that one holding property for the purpose of enforcing a lien can hold the proprietor for the expense of keeping it"; and the rule works both ways. These slugs, therefore, were the property of the defendant, and legally stand in the same position as the

sheets delivered by the plaintiff prior to February 8, 1901, and no lien attaches thereon. We thus agree with the learned judge at special term in the statement that "those goods were fully paid for, and were left in plaintiff's possession for a particular purpose wholly inconsistent with the claim of a lien, and under such circumstances no lien will attach. 19 Am. & Eng. Enc. Law (2d Ed.) 13."

We are, then, to determine whether a lien attaches, as found by the special term, to the slugs produced by the defendant, and subsequent to February 8, 1901, for which, it is conceded, payment has not been made. Up to this point we have discussed the questions presented as if the contract originally made between the parties was being carried out in its entirety. As a matter of fact, however, the evidence shows that there was a material deviation from the terms of that contract upon the subject of payments. It provided that the payments should be weekly for the work performed. The defendant, however, soon fell behind, and the plaintiff agreed not to insist upon payment for the time being, nor until a date named, when certain work was performed. The claim thus deferred was for $5,000 for work produced, and the weekly statements show that payments were made only in excess of such $5,000 due. Credit was further extended by the plaintiff's accepting three notes for the balance due over the $5,000. It is true that these notes were never paid, and were tendered to the defendant on the trial; but they were accepted in payment, and such acceptance was a waiver of the lien. An extension of credit waives a lien. 19 Am. & Eng. Enc. Law (2d Ed.) 28. We have not overlooked the cases in which it has been held that mere acceptance of notes, where they are not paid, and where possession of the property has in the meantime been retained, does not constitute a waiver; it being competent to return the notes. In the application of such rule, however, the character of the possession must be considered; and where, as here, the possession which the plaintiff had was for the defendant, as shown by the fact that a charge for storage was made, the legal result upon the question of waiver is the same as though there was an actual delivery of the property, and acceptance of notes in payment therefor. With respect to the slugs, therefore, it thus appears that the plaintiff has lost its lien by accepting payment, or extending credit, or transferring ownership and charging storage, either and all of which would constitute a waiver of any lien which plaintiff might otherwise have had. And what has been said about slugs applies equally to the paper and other property which it holds.

That part of the judgment, therefore, appealed from by the plaintiff, which holds that the plaintiff is not entitled to a lien upon the entire property, should be affirmed; and, as to the defendant's appeal, the judgment should be reversed, and a new trial ordered, with costs to the defendant to abide the event. All concur.