J. BRAUFMAN, *d. b. a.* AMERICAN JOBBING COMPANY, v. HART PUBLICATION, INC.[1]

June 8, 1951.

No. 35,499.

*Robins, Davis & Lyons* and *Sidney Feinberg*, for appellant.

*Thompson, Hessian, Fletcher & McKasy* and *Byron W. McCullagh*, for respondent.

LORING, CHIEF JUSTICE.

This is an action brought by J. Braufman, *d. b. a.* American Jobbing Company, to recover possession of certain printed and unprinted paper or its value in lieu thereof. At the time this action was commenced, defendant had possession of the disputed paper and was holding it under a claim of lien for storage and for work and labor performed in connection with it. The case came on for trial before the district court without a jury, and at that time plaintiff withdrew any and all claim to the disputed paper which was printed. The court made findings and stated as its conclusion of law:

[1]Reported in 48 N. W. (2d) 546.

"That the plaintiff is the owner of said paper and entitled to the possession thereof upon the payment to the defendant of the sum of $4,662.48 with interest from March 20, 1947, to date at the rate of six per cent per annum."

Plaintiff moved for amended findings and conclusions of law or for a new trial. Thereafter the court entered an order amending one sentence of the findings and otherwise denying plaintiff's motion. Judgment was entered, and plaintiff has appealed from it. The court, having determined that defendant's claim for work and labor performed exceeded the value of the disputed paper, made no finding as to whether defendant was entitled to compensation for storage of the paper.

The facts of this case are substantially undisputed. October 1945, the Park Square Manufacturing Company, a copartnership, delivered a carload of paper to defendant, Hart Publication, Inc. This carload of paper, consisting of approximately 467 reams, was delivered to defendant pursuant to a contract between Park Square Manufacturing Company and defendant, wherein defendant had been engaged to print certain paper forms pursuant to directions to be received from Park Square Manufacturing Company. In April 1946, defendant printed and delivered some 50,000 sheets of this paper to Park Square Manufacturing Company. The printing charges due on that shipment are not involved in this action.

In March 1947, Park Square Manufacturing Company incorporated as Park Square, Incorporated, and took over all the assets and assumed the liabilities of the copartnership. In March 1947, the new corporation requested an additional printing from the carload of paper in defendant's possession. Defendant performed the requested printing shortly thereafter. The charge for labor and material on this second printing was $4,662.48. Park Square, Incorporated, having failed to pay this bill, defendant withheld shipment, and shortly thereafter Park Square, Incorporated, was adjudged a bankrupt.

Defendant filed a claim in the bankruptcy proceeding but received no preference or dividend by reason of its claim. In August

1947, the trustee in bankruptcy executed and delivered to plaintiff a bill of sale of all the assets of the bankrupt corporation, including any and all rights that the trustee might have to the paper remaining in defendant's possession.

On appeal, the position of the parties is this: With reference to both the printed and unprinted paper remaining in its possession, defendant claims a possessory lien for the material and labor furnished in processing the second printing of paper. Plaintiff, as assignee of the trustee in bankruptcy, seeks to recover the unprinted portion of the carload of paper or to recover its value in lieu thereof. There are 238 reams of unprinted paper, the value of which was stipulated and found to be $2,249.10.

Although plaintiff has assigned error on the trial court's refusal to strike certain findings and conclusions of law and substitute others in lieu thereof, the substance of the error assigned is that the trial court committed an error of law in upholding defendant's lien for labor and material with reference to the unprinted portion of the paper in defendant's possession. In this respect, it is plaintiff's contention that no lien for labor and material can attach to personal property on which no labor and material have been expended or to such property when its value has not been enhanced by the lien claimant.

The pertinent provisions of our statutes covering lien claims of the kind here in dispute are found in M. S. A. 514.18 and 514.19. The provisions of those two sections which concern us here read as follows:

"514.18. Whoever, at the request of the owner * * * of any personal property, shall * * * contribute in any of the modes mentioned in section 514.19 * * * to the enhancement of its value, shall have a lien upon *such property* for the price or value of *such* * * * contribution, * * * and the right to retain *the* property in his possession until such lien is lawfully discharged; * * *.

"514.19. Such lien and right of detainer shall exist for:

\* \* \* \* \*

"(4)   Making, altering or repairing any article, or expending any labor, skill or material *thereon.*"   (Italics supplied.)

Plaintiff seeks to stress those words of the lien statute which are italicized above and which, in a highly literal sense, tend to support its contention that defendant's lien does not attach to the paper on which no labor or material has been expended in printing.

It is true that both under our statute[2] and under the common-law lien theory[3] the basis of a lien claim for services and materials is that the lien claimant is entitled to be reimbursed for labor and materials which have enhanced the value of property on which the lien is claimed.   There is likewise a rule expressed in our lien statute,[4] and applicable to the common-law lien,[5] which regards the lien as lost once the lien claimant permits the owner to regain possession of the goods on which the lien is claimed.   However, these rules are not applied literally in cases where the property subject to the alleged lien and other property on which no lien is claimed were delivered to the lien claimant under a single contract[6] relating to both.   The special application of lien law rules with reference to articles delivered under a single contract is best illustrated in the cases.

As early as 1814, the single-contract theory mentioned above was confirmed in England.   In Blake v. Nicholson, 105 Reprint [K.B.] 573, an action in trover was brought by assignees of a bankrupt to recover certain portions of a printed work then in the possession of defendant, a printer.   Defendant had printed some 8,750 copies of the work and had delivered 5,987 of them.   When plaintiffs offered

---

[2]M. S. A. 514.18.

[3]See, 1 Jones, Liens (3 ed.) § 742, and cases cited therein.

[4]M. S. A. 514.18: "* * * voluntary surrender of possession shall extinguish the lien herein given." See, also, Bongard v. Nellen, 210 Minn. 392, 298 N. W. 569; Ferriss v. Schreiner, 43 Minn. 148, 44 N. W. 1083.

[5]Varley & Co. v. Oberg, 153 Minn. 113, 189 N. W. 450.

[6]In the case at bar, it was stipulated at the outset of the trial that the contract which these parties had for printing this carload of paper was one contract and that the paper was delivered to defendant pursuant to that contract.

to pay the pro rata value of the printing performed on the copies remaining in defendant's possession in return for such copies, defendant refused to deliver them. Defendant insisted that he had a lien for the whole balance due on the entire printing. The trial court found that the work was performed as one entire work and directed a nonsuit. On appeal, the trial court was affirmed, the court holding that defendant had a lien upon any part of the goods—in that case the printed copies retained—for the balance due on the entire work. In his opinion, Lord Ellenborough said (105 Reprint 573):

"I think the defendant had a lien for the whole balance, the work being an entire word [*sic*] [work] in the course of prosecution, upon the same principle that a tailor, who is employed to make a suit of cloaths, has a lien for the whole price upon any part of them."

The result of this rule, of course, is that the goods retained by the lien claimant are charged not only with the value of services specifically performed upon them, but also with the value of services performed on other goods.

It thus appears that where goods are delivered to a lien claimant under a single contract for services relating to all of the goods, the goods retained in the lien claimant's possession may be charged not only with the value of services performed upon them, but also with the value of services performed upon other goods delivered under the same contract, the entire mass of goods being treated as a unit. In strict logic, if a lien claimant may charge goods in possession not only with the value of services which have enhanced their value, but also with the value of services performed upon other goods no longer in his possession but which were delivered under the same contract, it follows that he may do likewise with retained goods on which no services have been performed; for, in each case, the retained goods are being charged for services which have not been performed upon them. In both cases, the value of the retained goods is not enhanced to the extent of the lien claim.

In light of the logic of the above-expounded theory, it is not to be wondered at that in 1816 the logical extension was made. In Chase v. Westmore, 105 Reprint [K.B.] 1016, an action in trover was brought by assignees of two bankrupts to recover certain wheat delivered to defendant, a miller, for grinding. Some 146 loads of wheat had been delivered to defendant by vessel at various times with instructions as to the grinding and mixing. At the time of bankruptcy, there remained in defendant's possession: (1) *7 loads of unground wheat;* (2) 10 loads of meal produced from the wheat; (3) 100 bushels of wheat in assorted grinds and *80 sacks,* which had been delivered to defendant by the bankrupts. In that case, the court allowed defendant a lien upon all the goods remaining in his possession for the balance due for grinding under the entire contract, thus allowing the lien to attach to unprocessed wheat and bags delivered under the same contract with wheat which had been ground and on which compensation was due the lien claimant under the contract.

In 1851, the rule followed in the English cases was considered and applied by the New York court of appeals. In Morgan v. Congdon, 4 N. Y. 552,[7] the court was confronted with a case where a quantity of logs was delivered on different days to the owner of a sawmill to be sawed into boards. He sawed a part of them and delivered them to the bailor without receiving payment. It was held that the mill owner had a lien upon the unsawed logs remaining in his possession for the entire amount due under the single contract for sawing.

Later, in Conrow v. Little, 115 N. Y. 387, 22 N. E. 346, 5 L. R. A. 693, affirmed, 23 N. E. 1144,[8] a firm of papermakers contracted with

[7] In 1941, the Morgan case was followed by the federal district court for the eastern district of Illinois. In re R. Hal Compton Crude Oil Purchasing Co. (D. C.) 39 F. Supp. 1.

[8] The single-contract rule was applied and the Conrow case cited as authority in Hare's Motors, Inc. v. Fred Roeder Mfg. Co. 207 App. Div. 670, 202 N. Y. S. 830, affirmed, 238 N. Y. 590, 144 N. E. 904. The latter case was decided under the provisions of 32 McKinney's Consol. Laws of New York Ann., Lien Law, § 180, which is substantially the same as the pertinent portions of our own M. S. A. 514.18, 514.19 (4).

a publisher to furnish paper for a certain book. The printer had refused to make any contract until assured by the papermakers that they would furnish the paper. The papermakers delivered the required paper to the printer, but, in paying for the paper, the publisher gave the papermakers a forged note. The papermakers thereafter commenced an action to recover the paper, but the printer claimed a lien upon it for work done. Although the printer had printed only four reams out of a total of 150 reams delivered, the court allowed the lien to attach to the remaining unprinted paper delivered under the same contract with the paper on which printing had been done.

In the Conrow case, there was evidence that the printer had done composition, make-up, electrotyping, and presswork in connection with the entire contract, and on this basis plaintiff in the case at bar seeks to distinguish the Conrow case. Plaintiff claims that no such showing was made in the case at bar. We think that in light of the history of the single-contract rule, and particularly in light of its application in the Morgan case, previously decided in New York, the construction put upon the Conrow case by plaintiff here is altogether too narrow and is such as would run contrary to the rationale of the rule. We take it to be the foundation of the single-contract rule that several articles delivered under a single contract for the processing of the whole are to be treated as a unit. The result of applying it is that charges for work done on any portion of goods covered by the same contract attaches to the remaining goods in the same respect as if the work had been performed on those goods.

The single-contract rule has never been applied in Minnesota under our lien statute so far as we can determine, but an attempt to apply one feature of it appears to have been made in Bongard v. Nellen, 210 Minn. 392, 298 N. W. 569. In that case, a car owner had delivered his car to a mechanic on several occasions for purposes of repair. Each time after repairs were made the car was redelivered into the owner's possession without the mechanic's having received compensation for his services. The last time the owner de-

livered his car to defendant, the mechanic, the latter kept the car, claiming a lien upon it for the balance due on account of repairs over the entire period of service. There appears to have been a dispute as to whether the services were performed under a single contract to *place* the car in good mechanical condition with work being done at intervals for the convenience of both parties or whether the services were performed under separate contracts for repair. The court's language with reference to this matter indicates that some consideration and recognition was given to the single-contract concept in lien law. There, the court stated (210 Minn. 394, 298 N. W. 569):

"For defendant, the argument is that his contract 'to put the said automobile in a good state of repair' was *unitary,* so much so that his terminal possession protected the lien as to all his earlier charges. The record is too indefinite to sustain that conclusion." (Italics supplied.)

Having determined how goods delivered under a single contract are treated for lien purposes at common law, we are next confronted with the problem of determining the application of our lien statute, which, so far as it goes, replaces the rules governing common-law liens. In reading M. S. A. 514.18 and 514.19(4), it becomes apparent that our lien statute was drafted in general terms which neither expressly affirm nor abolish the single-contract rule embodied in common-law lien theory. In such circumstances, we must follow the rule of statutory construction announced in State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 5, 273 N. W. 603, 606, where the court stated:

"* * * It is a general rule of the construction of statutes that they are presumed not to make any alteration in the common law further or otherwise than they expressly declare, and that existing common-law remedies are not to be taken away by a statute unless by express enactment or necessary implication."

The same rule of construction was later applied in State ex rel. Verbon v. County of St. Louis, 216 Minn. 140, 12 N. W. (2d) 193. See, also, 6 Dunnell, Dig. & Supp. § 8958.

In conformity with the foregoing rule of construction, the absence of express language in our lien statute altering the common-law single-contract rule obliges us to hold that it is a subsisting rule of law. The application of that rule dictates that several articles of personal property, delivered under the same contract, be treated as a unit under our lien statute. We concur with the trial court's determination that defendant's lien attaches to both the printed and unprinted paper in its possession as security for the entire amount due for printing any portion of the paper delivered to defendant under the single contract.

Affirmed.