**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**TOYS OF THE WORLD CLUB, INC.,**
Defendant,

and

**Publishers Printing-Rogers Kellogg Corporation, Defendant-Appellant.**

**No. 186, Docket 25853.**

United States Court of Appeals
Second Circuit.

Argued Jan. 18, 1961.

Decided March 10, 1961.

Benjamin Menschel, of Wallstein, Menschel & Wallstein, New York City (Leonard M. Wallstein, Benjamin Menschel and Leonard M. Wallstein, Jr., New York City, on brief), for defendant-appellant.

S. Hazard Gillespie, Jr., U. S. Atty. for the Southern District of New York, New York City, Renee J. Roberts, Asst. U. S. Atty., New York City, of counsel (Renee J. Roberts and Charles T. Beeching, Jr., Asst. U. S. Attys., New York City, on brief), for plaintiff-appellee.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

This is an action by the United States seeking a declaration that its liens for withholding taxes, I.R.C. § 6321, 26 U. S.C. § 6321, against defendant Toys of the World Club, Inc., hereafter Toys, are superior to any lien of defendant Publishers Printing-Rogers Kellogg Corporation, hereafter Publishers.

In October, 1955, Toys and Publishers agreed that Publishers should do certain printing, on paper stock to be furnished it by Toys. The printed material was to be shipped during November, 1955, beginning November 4, when Toys was to pay $2,250. Toys was to pay $2,250 more on November 11, half the balance, to wit, $7,233.45, on December 12, and a like amount on December 31. During September, in anticipation of the contract, Toys delivered 269,425 sheets of paper to Publishers. In November, Publishers shipped all the reprints ordered by Toys but received no payment. The printing used only 217,000 sheets, leaving 52,425 in Publishers' hands. On various dates from February 21, 1956 to May 23, 1956, the United States assessed withholding taxes against Toys and filed notices of tax liens beginning March 7, 1956. Thereafter, the United States demanded the paper in the possession of Publishers; the latter refused to comply, claiming an artisan's lien, N.Y.Lien Law, McKinney's Consol.Laws, c. 33, § 180. On April 1, 1957, Publishers gave notice of intention to sell the paper pursuant to N.Y.Lien Law, § 201. Thereupon, Publishers' attorney and the United States Attorney for the Southern District of New York entered into a stipulation that the paper might be sold free and clear of

the government's claim and that the net proceeds should be held by Publishers' attorney subject to the rights of the parties as these might subsequently be determined. The net proceeds were $1,705.69.

The United States and Publishers each moved for summary judgment determining the superiority of its lien. The United States asserted that Publishers had not obtained an artisan's lien because Publishers had done nothing to improve the surplus paper that it held and the payment and delivery schedules were inconsistent with a lien; and that even if Publishers had an artisan's lien, this was subordinate to the tax liens of the United States. Publishers asserted the validity of its artisan's lien and contended this was entitled to priority over the tax liens, (1) because at the time of the tax assessments Toys no longer had a property interest in the paper; (2) because Publishers was a pledgee and was therefore protected by I.R.C. § 6323, 26 U.S.C. § 6323 against unfiled liens; and (3) because in any event Publishers' lien outranked the government's under the principle of first in time, first in right. Judge Dawson sustained the government's claim that its tax liens ranked Publishers', even assuming the latter's validity. He therefore granted the government's motion for summary judgment and denied defendant's cross-motion without finding it necessary to pass on the issues with respect to Publishers' lien, 1959, 170 F.Supp. 450.

We agree with Judge Dawson's conclusion that the first two grounds asserted by Publishers to support the superiority of its lien were inadequate; but, with the trepidation natural in view of the course of recent Supreme Court decisions, we disagree with his ruling on the third ground. Finding no merit in the government's attacks on the validity of Publishers' lien, we therefore reverse the order granting the government's motion for summary judgment and direct that summary judgment be granted to Publishers.

I. The District Court's conclusion that the tax liens outrank Publishers' lien, assuming the latter to be valid.

■ (1) Publishers first seeks to bring itself within the Supreme Court's decisions in Aquilino v. United States, 1960, 363 U.S. 509, 80 S.Ct. 509, and United States v. Durham Lumber Co., 1960, 363 U.S. 522, 80 S.Ct. 1282, 4 L. Ed.2d 1371, see Matter of The City of New York, 1959, 5 N.Y.2d 300, 184 N.Y. S.2d 585, 157 N.E.2d 587, certiorari denied *sub nom.* United States v. Coblentz, 1960, 363 U.S. 841, 80 S.Ct. 1606, 4 L.Ed.2d 1726, and our decision in City of New York v. United States, 2 Cir., 1960, 283 F.2d 829, that government tax liens will not prevail if, at. the time of the assessment, the property against which the lien is asserted no longer belonged to the taxpayer, I.R.C. § 6321, but rather to adverse claimants, as in Aquilino and Durham, or to an assignee for the benefit of creditors, as in City of New York. Publishers asserts these decisions apply here because, when the taxes were assessed, Publishers was holding paper, ultimately found to be worth only $1,705.69, as security for an indebtedness more than ten times that much. From a practical standpoint, Toys' interest in the paper at the time of the tax assessments was surely minimal if Publishers had a valid lien for the entire debt. However, apart from that condition, which, as we shall see, is by no means certain of fulfillment, this appears to be a situation in which the legal test necessarily turns on form rather than substance. In contrast to the situation in the City of New York and Durham cases and what the Supreme Court thought might be the situation in Aquilino, here the taxpayer had title to the property when the taxes were assessed, N.Y.Lien Law, § 203. Aquilino itself, 363 U.S. at pages 511, 516, 80 S.Ct. 509, shows that the mere excess of a lien over the value of taxpayer's property is not enough to warrant a conclusion that the property no longer "belongs" to the taxpayer; if it were, there would have been no need for remand to the New York Court of Appeals to "ascertain the property interests of the taxpayers under state law."

■ (2) Publishers' second argument is based on the provisions of I.R.C. § 6323(a), that, until filing as therein provided, "the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor * * *." Relying on Tax Regulations § 301.6323–1, (a) (2) (ii), that "The determination whether a person is a mortgagee, pledgee, purchaser, or judgment creditor, entitled to the protection of section 6323(a), shall be made by reference to the realities and the facts in a given case rather than to the technical form or terminology used to designate such person," Publishers claims to be a "pledgee." Plainly it is not if the statute uses the word in the traditional sense. The common law drew a sharp distinction between the pledge, whereby the possession of personal property was transferred as security for indebtedness, and possessory liens arising in certain situations wherein chattels were entrusted to persons authorized to retain them until services to the chattels were compensated. This was far more than a verbal distinction, since the pledgee had the right to sell but the possessory lienor did not, Thames Iron Works Co. v. Patent Derrick Co., 1 J. & H. 93, 70 E.R. 676 (1860); American Law Institute, Restatement of Security, §§ 1, 48, 59, 72; Ray A. Brown, Personal Property (2d ed. 1955), §§ 107, 119, 128, 133.

Publishers argues that, with this substantial distinction eliminated by statute, as it is for a New York artisan's lien by Lien Law, § 200, the verbal distinction ought not be given significance. The argument is not without force, since certainly the policy reasons supporting the protection against unfiled liens accorded pledgees by I.R.C. § 6323 apply in like measure to artisans, warehousemen, innkeepers and carriers. However, the distinction was so well established that we cannot assume Congress intended to obliterate it, and we do not read the Regulations as broadening "pledgee" to in-

clude the holder of a possessory lien even if a regulation could perform that office. The Regulations' more modest purpose is manifested by the sentence following that quoted above, "Thus, a person who is in fact and in law a mortgagee, pledgee, or purchaser will be entitled as such to the protection of section 6323(a) even though such person is otherwise designated under the law of a State, such as The Uniform Commercial Code." The holder of a possessory lien is not "in fact and in law" a pledgee, even if statute has now given him a power to sell, on complying with certain statutory conditions, similar to what the pledgee always had. What the Regulations mean is that a person who meets the common law definition of pledgee does not lose protection because he is given some other name—not that persons who would not have been considered pledgees at common law should henceforth be so regarded. Hence, if the taxes had been assessed against Toys before the artisan's lien arose, the government would prevail.

(3) However, they were not so assessed; and the Supreme Court has said that "the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States" and that when Congress enacted what is now I.R.C. § 6321, it had in mind the "cardinal rule," stated by Chief Justice Marshall in Rankin v. Scott, 1827, 12 Wheat. 177, 179, 6 L.Ed. 592, "that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him, in a Court of law or equity, to a subsequent claimant." United States v. City of New Britain, 1954, 347 U.S. 81, 84, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520.[1] Is the lien given an artisan by § 180 of the New York Lien Law "a prior lien" of this character?

Section 180, which we quote in the margin,[2] follows the common law by authorizing an artisan who enhances the value of an article of personal property to "retain possession thereof" until his charges are paid. Section 200 goes beyond the common law by providing that such a lien against personal property "in the legal possession of the lienor, may be satisfied by the public sale of such property according to the provisions of this article." These provisions call only for the service of notice upon the owner, § 201, newspaper advertisements, § 202, and sale by public auction, § 202. No application to a court is required.

Decisions of the Supreme Court, first rendered under the priority-in-insolvency statute, Rev.Stat. § 3466, 31 U. S.C.A. § 191, beginning with County of Spokane v. United States, 1929, 279 U.S.

1. The New Britain opinion and decision, in which Mr. Justice Jackson joined, are clearly inconsistent with the position taken in his earlier concurring opinion in United States v. Security Trust and Savings Bank, 1950, 340 U.S. 47, 51, 71 S. Ct. 111, 95 L.Ed. 53, which seems to have been followed here by the District Court, that the government's lien under I.R.C. § 6321 necessarily takes priority over all interests of others save the pre-filing interests specifically protected by I.R.C. § 6323. As pointed out by Professor Ernest J. Brown in 72 Harv.L.Rev. 77, 83–85 (1958), the predecessor of § 6323 was enacted in 1913 to protect purchasers and certain encumbrancers against prior unrecorded tax liens and thereby overcome United States v. Snyder, 1893, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, which had upheld an unrecorded tax lien against a subsequent bona fide purchaser for value. See H.R.Rep. No. 1018, 62d Cong., 2d Sess. (1912); Sen.Rep. No. 648, 76th Cong., 1st Sess. 9–10 (1939); H.R.Rep. No. 855, 76th Cong., 1st Sess. 25–26 (1939). The desire to protect certain persons acquiring interests after a tax lien had arisen but before it had been filed implies no intention to subordinate other persons who had acquired interests before any tax lien arose.

2. "A person who makes, alters, repairs or in any way enhances the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid."

80, 49 S.Ct. 321, 73 L.Ed. 621, and subsequently carried over to the tax lien statute, I.R.C. § 6321, United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53, have established that the government's tax lien will prevail over earlier created liens that are general or inchoate. Among liens that have been held to be thus subordinated to the government's tax lien are an attachment lien, United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; a garnishment lien, United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; a landlord's distress lien, United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271; mechanics' liens, whether unrecorded, United States v. Colotta, 1955, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725, or recorded, United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; and the lien of a surety under a performance bond with an assignment of sums due and to become due, United States v. R. F. Ball Construction Co., 1958, 355 U.S. 587–588, 78 S.Ct. 442, 2 L.Ed.2d 510. On the other hand, in United States v. City of New Britain, supra, a city's lien for taxes and water rents was held to have become "choate" and to prevail over subsequently accruing Federal tax liens, in contrast to the ruling with respect to the tax lien of the Town of Walpole in United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. No Supreme Court decision and none of our own seems to have dealt with the relative priority of a possessory lien and a United States tax lien thereafter accruing.

Whether the reason why New Britain succeeded where Walpole failed was that Connecticut segregated tax liens so that "The interest of each person in each item of real estate * * * shall be subject to a lien for that part of his taxes laid upon the valuation of such interest," Conn.Gen.Stat. (1949), § 1853, see also § 758, C.G.S.A. §§ 12–172 and 7–239, but New Hampshire made "The real estate of every person or corporation * * * holden for all taxes assessed against the owner thereof" as well as "all taxes thereon," N.H.Rev.Laws (1942), C. 80, § 17, even though the property of Gilbert Associates was the very property on which Walpole's taxes had been assessed, Petition of Gilbert Associates, 1952, 97 N.H. 411, 90 A.2d 499, see United States v. City of New Britain, 347 U.S. at page 84, 74 S.Ct. 367, 98 L.Ed. 520, or that the requirement of "choateness" is more lenient in cases arising under the tax lien statute than under Rev.Stat. § 3466, see 347 U.S. at 87,[3] 74 S.Ct. 367, 98 L.Ed. 520, the instant case seems to come within New Britain rather than Gilbert. It arises under the tax lien statute, not under Rev. Stat. § 3466, and Publishers' lien was on specific property. Like the City of New Britain and unlike attaching and garnishing creditors and mechanics' lienors, Publishers could realize on its lien without having to resort to any court. Even if the government's lien under I.R.C. § 6321 can be defeated only by the "fully perfected and specific lien" which alone will defeat the United States' priority under Rev.Stat. § 3466, if, indeed, even that will, People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 370, 67 S.Ct. 340, 345, 91 L.Ed. 348, Publishers' lien meets the requirements laid down in the Campbell case—certainty of the identity of the lienor and of amount, attachment to specific property, and severance of "the property from the debtor's general assets as of the crucial date," at page 376, 67 S.Ct. at page 348. Here there was no "more perfect lien to come," People of State of New York v. Maclay, 1933, 288 U.S. 290, 294, 53 S.Ct. 323, 324, 77 L.Ed. 754; the lien was as perfect as a lien ever can be until it ceases to be a lien—Publishers

---

3. See the discussion in Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the In- choate and General Lien, 63 Yale L.J. 905, 927–30 (1954).

had possession of the paper and was entitled to continue to hold this until either its debt was paid or the paper was sold to satisfy this. It is unnecessary to go beyond Armory v. Delamirie, 1 Str. 505, 93 E.R. 664 (1722), to appreciate the importance the common law has attached to lawful possession, "such a property as will enable him [the possessor] to keep it against all but the rightful owner" and hence sufficient to support trover. The artisan's and other possessory liens go back to the fifteenth century, Y.B. 5 Ed. IV, Pasch. pl. 20, Y.B. 22 Ed. IV, Hil. pl. 15, cited in 7 Holdsworth, History of English Law, p. 512. We cannot believe that when Congress enacted the predecessors of the tax lien statute during and after the Civil War, 13 Stat. 470–471 (1865), 14 Stat. 107 (1866), or thereafter, it meant to allow the government to retake goods of taxpayers held at the date of assessment by third persons under such independent and ancient claims of right. Rulings under Rev.Stat. § 3466 giving the United States priority over liens have stressed the absence of "a change of title or possession," People of State of New York v. Maclay, supra, 288 U.S. at pages 293–294, 53 S.Ct. at page 324, United States v. Gilbert Associates, Inc., 345 U.S. 361, supra, at page 366, 73 S.Ct. 701. Here there has been a change of possession; we see no reason why this should be less effective when the taxpayer has voluntarily surrendered possession to one entitled to retain it than if possession had been taken by a sheriff or marshal.

II. The validity of Publishers' lien.

This brings us to the government's contentions, upon which the District Court did not pass, that Publishers had no valid lien (a) because the paper which Publishers held was surplus that Publishers had done nothing to improve, or (b) because the delivery and payment schedules negated an intention that Publishers should have a lien. We might remand for further consideration of these, 28 U.S.C. § 2106, but we see no purpose in doing so since the issues are of law and have been fully briefed, and decision now may avoid a subsequent appeal to this Court.

 (a) The government's first contention is largely answered by Morgan v. Congdon, 1851, 4 N.Y. 552 and Conrow v. Little, 1889, 115 N.Y. 387, 22 N.E. 346, 5 L.R.A. 693, each upholding an artisan's lien for goods delivered into the artisan's possession but not improved because the artisan stopped work when the owner failed to pay for work already done. These cases are inconsistent with any principle that the artisan may retain only chattels he has in fact improved. The government seeks to distinguish them on the basis that here, as matters turned out, the property retained was surplus which the artisan never was to improve. The government has cited no cases from New York or elsewhere to show that this difference in fact should lead to a difference in result, and we find no basis for so holding. Once it is established, as it unquestionably is, that the artisan's lien does not depend on improvement of the particular goods being retained and that surrender of part of the goods does not eliminate the artisan's privilege of holding the balance for work done in the past, Wiles Laundering Co. v. Hahlo, 1887, 105 N.Y. 234, 239, 11 N.E. 500, 502; International Electronics Co. v. N. S. T. Metal Products Co., 1952, 370 Pa. 213, 88 A.2d 40; American Law Institute, Restatement of Security, § 61 comment (f); Brown on Personal Property (2d ed.) p. 523, we can see no reason for refusing recognition to the artisan's lien on property remaining after all the work has been done and deliveries made, provided only that it came to him as part of the same transaction; it is immaterial that the owner overestimated the amount the artisan needed for his work. Braufman v. Hart Publication Inc., 1951, 234 Minn. 343, 348, 48 N.W.2d 546, 549, 25 A.L.R.2d 1030, in which the court noted that the law of Minnesota with respect to artisan's liens was substantially the same as that of New York.

 (b) The government's second attack upon the validity of Publishers' lien

rests upon the principle that there must be "nothing in the contract for doing the work inconsistent with the right of lien; and that where a particular future time of payment is fixed, which may be subsequent to the time when the owner is entitled to a return of the article upon which the work is done, there can be no lien." Wiles Laundering Co. v. Hahlo, supra, 105 N.Y. at page 240, 11 N.E. at page 502; Chandler v. Belden, 1820, 18 Johns., N.Y., 157, 162–163; Chase v. Westmore, 5 M. & S. 180, 105 E.R. 1016 (1816); Brown on Personal Property, § 110. See Cardozo, J. in Matter of Heinsheimer, 1915, 214 N.Y. 361, 366–367, 108 N.E. 636, 638. Assuming without deciding that this principle applies to a statutory lien which, like § 180 of the New York Lien Law, goes beyond the common law only in according a power of sale, as seems indicated by Blumenberg Press v. Mutual Mercantile Agency, 1st Dept. 1902, 77 App.Div. 87, 78 N.Y.S. 1085, cf. Olson v. Orr, 1915, 94 Kan. 38, 145 P. 900, it does not avail the government on the facts here. The first payment of $2,250 was to be made simultaneously with the beginning of delivery, and the second $2,250 instalment was also to be paid long before completion. Nothing in the agreement was inconsistent with Publishers' right to refuse to deliver and cease work if these amounts were not paid. In re Tele King Corp., D.C.S.D.N.Y.1955, 137 F.Supp. 633. Hence Publishers had a valid lien for these sums and the authorities cited above show it did not relinquish this lien by making the deliveries. Since the amount of the proceeds is less than even the first instalment of $2,250 due Publishers, it is immaterial that Publishers may have no lien for the amounts payable only after all deliveries were to have been made.

The order granting summary judgment to the United States is therefore reversed. Since this reversal eliminates any basis for the denial of Publishers' cross-motion for summary judgment, we think it proper to direct the granting of that motion even though its denial would not itself have been appealable, 28 U.S.C. § 2106; 6 Moore, Federal Practice (2d ed. 1953), par. 56.27 [2]; United States v. DeWitt, 5 Cir., 1959, 265 F.2d 393, 400.

It is so ordered.